# Davis *versus* Funk.

### *Collateral Securities, Rights, Duties and Liability of Holder.*

1. Where a note, left by the owner with a broker to be sold, was pledged by him, for a loan to himself, and on default of payment was sold by the pledgee for much less than its face, *without notice*, it was *held*, that the administrator of the owner, having tendered the advance made by the pledgee, was entitled to recover from him the difference between that sum and the face of the note. Whether proper to sell the collateral not determined, because the question not raised.

2. The bailee of a pledge or pawn must give notice to the pledgor, of an intent to sell, after default of payment, and also of the time and place of sale, in the absence of a contract to sell *ex mero motu*.

ERROR to the District Court of *Philadelphia*.

This was an action of trover by Richards, whose administrator, Funk, was afterwards substituted, against Davis, for a promissory note for $1100, dated April 4th 1857, made by one Crees, payable in four months, to the order of Morgan H. Jones, who endorsed to Howard Tilden, by whom it was endorsed in blank.

The case was this :—Richards, the owner of the note mentioned in the declaration, being desirous of selling it, intrusted it to one Riley, by whom Edward S. Jones, whose business was that of a note broker, was employed and intrusted with the note for this purpose. Being unable to effect the object, he applied to the defendant, and borrowed from him, on the 22d April 1857, $490, to be repaid on the 2d of May following,—at the same time pledging the note as security for the loan. There was no

[Davis *v.* Funk.]

notice to defendant, nor any reason to suspect that the note was not the absolute property of Jones until after the sale of the note by defendant, which was the act of conversion on which the recovery was claimed. Nor was the plaintiff cognisant of the fact that Jones held the note, nor of what had been done with it.

Shortly after the time for repayment of the loan, defendant notified Jones that the money must be paid, or the note, held as collateral, would be sold. Jones made no objection to this, but asked for a few days' further delay. Ten days afterwards defendant, without any further notice, placed the note in the hands of a regular note broker, who sold it to Tilden, the endorser, for $800. The net amount, $790, was paid to the defendant. On the 4th June 1857, the plaintiff tendered the amount of the original advance and interest, demanded the note, and on refusal brought this action.

On the trial, the defendant requested the court to instruct the jury as follows:—

1. The defendant is not liable for more than he received on the sale of the note, if that was made upon notice to the person from whom he received the same in pledge, without notice of the plaintiff's title, and the amount thus received he was entitled to apply in payment of the debt for which the note was pledged.

2. If the court should be of opinion against the defendant on the first point, then the learned judge is asked to charge the jury that though, under ordinary circumstances, the sale of a note by a pledgee is not authorized, yet the plaintiff cannot recover if the sale was made when the drawer's credit had become so far doubtful that a prudent holder would have sold for the price at which the defendant sold.

3. That under no circumstances is the defendant liable for more than the difference between the actual value of the note at the time of the sale, or at any time since, and the price received by the defendant.

The court below charged the jury as follows:—

" The note given by Richards to Riley to sell, may be regarded as put directly into Jones's hands. It had been justly said, that, in the case of an ordinary chattel, Jones could not have pledged it; but, as this was negotiable paper, the party dealing with him having it in possession, might deal with him as owner or holder.

" Davis, therefore, acquired the right of a pledgee, and the case must be treated as if Jones were the owner. What, then, was the understanding between Jones and Davis? On this point, we have the fact of the pledge, and its object,—and the conversation, which is evidence of the original understanding. The defendant informed Jones he would sell, and Jones, not disputing the right, asked further time. He did not forbid a sale, but, on the other hand, he did not expressly authorize it. The jury

[Davis v. Funk.]

must determine whether, from this conversation, they will draw the inference that the right to sell was an understood part of the contract. All that is proved, is, an assertion of an intention to exercise a right, and no denial of its existence; and from this the jury may infer that there was authority.

"If they find there was either an original authority to sell, or a subsequent authority, the question will then be, whether the authority was complied with? That is a question of fact I leave to the jury.

"The defendant ought to have taken the means to get the highest price. He might sell to a party to the note, if he would give more than any one else.

"If there was no authority by contract, express or implied, to sell, then had the defendant a right to do it? I incline to think he could, otherwise he might have to wait till the note became worthless. But then he must make a public sale, or give notice of time and place of sale specifically.

"If you find for the plaintiff, the damages will be the value of the note (of which the amount on its face is some evidence), less the advances made at the time of conversion."

On the first point submitted by the defendant's counsel, the court said, "That if the jury believe the defendant acted in good faith in making a sale, the advance should be deducted from the value of the note. If they found there was an authority to sell, it is for them to say whether the sale was made in good faith."

On the second point, he instructed the jury, "That there was nothing to exonerate the defendant, and the verdict must be for the plaintiff, unless the jury found an express or implied authority from Jones to sell, or notice of the time and place of sale."

The defendant then and there excepted to the charge of the learned judge, in answer to the first and second points; and also to so much of his charge as instructed the jury that the nature of the transaction itself, between Jones and Davis, independent of all agreement, did not authorize such a sale by Davis as was proved to have been made.

There was a verdict and judgment in favour of plaintiff for $588.80; whereupon the defendant sued out this writ, assigning for error here the following matters, to wit:—

1. The learned judge erred in disregarding the defendant's prayer for instruction, as set forth in his first point. And in instructing them that there must have been authority by contract, as distinguished from the authority which the transaction of loan or pledge, to be repaid at a day certain implied, the language of the learned judge being:—"If the jury believe the defendant acted in good faith in making the sale, the advance should be deducted from the value of the note. If they found there was

[Davis *v.* Funk.]

authority to sell, it is for them to say whether the sale was made in good faith." Whereby he did, in fact, instruct the jury, that the good faith in the matter of the sale was a prerequisite to the right to deduct the advance, but that before the point was to be considered, there must be found an authority to sell.

2.. Because the learned judge erred in instructing the jury, in answer to the second point:—That there was nothing (in these circumstances meaning) to exonerate the defendant, and the verdict must be for the plaintiff, unless the jury found an express or implied authority from Jones to sell, or notice of the time and place of sale.

3. Because the learned judge erred in his instructions to the jury, as follows:—" If there was no authority by contract, expressed or implied, to sell, then had the defendant a right to do it? I incline to think he could, otherwise he might have to wait till the note became worthless. But then he must make a public sale, or give notice of time and place of sale specifically. Whereas he should have instructed the jury that the contract of pledge to secure a loan payable at a given day, did authorize a sale at any time after default in the payment, in the manner and under the circumstances that were proved in the cause."

For plaintiff in error it was argued:—1. The action was misconceived. It was founded on a want of authority to sell—and yet the right to sell was admitted—the question thus being whether the sale was well made. It is submitted that an error in the manner of selling does not make the agent a mere wrongdoer, liable for the value of the thing, but only to an action on the case for the special damage. The distinction is material; for the measure of damage in trover is the value of the chattel at the time of conversion—in case, the actual damage by the wrongful act. In the former, it would be immaterial that at maturity all parties were insolvent, and the note worthless. In the latter, such facts would reduce the damages to the amount realized, and make them only nominal.

2. But if trover lies in such case, the distinction must be noted between a pledge by operation of law (in which case no right exists, but to retain as security), a pledge by contract for payment at a future time uncertain, and the pledge by contract to secure performance at a day certain.

The last head may be divided again into pledges of things not ordinarily the subject of sale, without written or judicial authority, as land; and those which are the ordinary subjects of daily traffic, as merchandise, stocks, and the like.

It is contended, 1. That the contract of pledge to secure performance at the day implies an authority to sell in the usual manner in which prudent owners of such property do sell when

[Davis *v.* Funk.]

desirous of converting the property. 2. That it is only where no time has been fixed for performance that notice must be given.

The judge expressly told the jury that the circumstances did not warrant the sale, even if in good faith, and such as a prudent owner would have made without there was either, 1. A public sale, or 2. Express notice of the time and place. It is submitted that he was in error on the authorities: Copper *v.* Dickenson, 1 Rolle 215; Pothonier *v.* Dawson, Holt, N. P. 383; Tucker *v.* Wilson, 1 P. Wms. 261; Hart *v.* Ten Eyck, 2 Johns. Ch. R. 100; Cortelyou *v.* Lansing, 2 Caines' Cases in Error 203; Garlick *v.* James, 12 Johns. 150; Henriques *v.* Franchise, Precedents in Ch. 205; Story on Bailm. § 311; Id. § 310; Id. § 308; Kent, 2 Com. 582; Chitty on Contr. 475; Johnson *v.* Vernon, 1 Bailey, S. C. 527; De Lisle *v.* Priestman, 1 P. A. Bro. 176; Bitner *v.* Brough, 1 Jones 120-7.

*Gest* and *Cuyler*, for defendant in error.—I. It would seem to be unquestionable that the owner of a promissory note which has been wrongfully converted, may maintain trover against the wrongdoer: Biddle *v.* Bayard, 1 Harris 150. See, also, Lockwood *v.* Bull, 1 Cowen 322; Stearns *v.* Marsh, 4 Denio 227; Railroad Co. *v.* Barker, 5 Casey 160.

The distinction taken by plaintiff in error is considered to be entirely immaterial, as the measure of damages would be necessarily the same, viz., "the actual damage by the wrongful act."

II. Was there error in the judge's charge?

There was no pretence of any agreement at the time the loan was made by Davis to E. S. Jones, whereby he was authorized, on Jones's failure to pay the loan, to sell or convert the note left as collateral security, and it is contended that no such agreement can be gathered from the only other interview between them, prior to the sale. And so the jury have found by their verdict, the court below having referred it to them to say whether there was any original or subsequent authority to sell, charging that defendant had no right, in the absence of express or implied contract, to dispose of the note at private sale without notice.

If there was any error in the charge, it was in ruling that the defendant had any right, in the absence of an agreement, to sell such collateral security as this was: Story on Bailments, § 321, citing Bowman *v.* Wood, 15 Mass. 534; Garlick *v.* James, 12 Johns. 146; Kent, 2 Com. 642.

None of the cases cited, where the right to sell was implied from the contract of loan, were cases of pledges of choses in action: Stearns *v.* Marsh, 4 Denio 227, was a pledge of boots and shoes; De Lisle *v.* Priestman, 1 P. A. Browne 174, was a pledge of stock; Pothonier *v.* Dawson, 1 Holt 383, was a pledge of wine; Tucker *v.* Wilson, 1 P. Wms. 261, was a loan upon an

[Davis *v.* Funk.]

exchequer annuity; Lockwood *v.* Ewer, 9 Mod. 271, was a pledge of East India stock; Capper *v.* Dickenson, 1 Rolle 215, was a pledge of goods; Hart *v.* Ten Eyck, 2 Johns. Ch. R. 100, was a pledge of military class rights for lands; Cortelyou *v.* Lansing, 2 Caines' Cases in Error 203, was a pledge of a certificate called in the report a depreciation note, without other explanation; Henriques *v.* Franchise, Precedents in Ch. 205, was a pledge of stock.

It is submitted that the authorities are the other way: Insurance Company *v.* Smith, 1 Jones 127, per Coulter, J.; Muirhead *v.* Kirkpatrick, 9 Harris 241; Hawks *v.* Hinchcliff, 17 Barb. 492; Lee *v.* Baldwin, 10 Geo. 208; Rhoads *v.* Megonegal, 2 Barr 39.

The defendant was bound to preserve the note, and collect it when due, and account for the proceeds.

If it should be considered by the court that the depositing of a promissory note, as collateral security, is in no wise different from the pledging of ordinary chattels to secure a debt, then the defendant in error contends that, in the absence of any special agreement, the pledgee cannot sell the pledge without either a public sale or notice to the debtor of the time and place of sale: and that the court below was right in so instructing the jury.

As to the cases cited by the plaintiff in error, on this point:—

1. In Copper *v.* Dickenson, 1 Rolle 215, there was no sale of the pledge; the question of notice of sale did not arise.

2. In Pothonier *v.* Dawson, 1 Holt 383, there is nothing to show whether notice of the sale was or was not given, and that question was not raised in this case.

3. In Tucker *v.* Wilson, 1 P. Wms. 261 (also and more correctly reported in 5 Brown P. C. 193), there was a demand of repayment and an *exact notice of time and place of sale*, which was strictly complied with.

4. In Hart *v.* Ten Eyck, 2 Johns. Ch. R. 100, the question now before the court did not arise.

5. Cortelyou *v.* Lansing, 2 Caines' Cases in Error 203, decides that if the pawnee sell before application to redeem, he is answerable for the value of the pledge.

6. In Garlick *v.* James, 12 Johns. 150, no sale of the pledge was made.

7. In Henriques *v.* Franchise, Precedents in Ch. 205, no question seems to have been raised as to the right to sell enough to meet the draft.

8. Johnson *v.* Vernon, 1 Bailey, S. C. 527, is but the syllabus of a South Carolina case: what the facts of the case were we are not informed.

9. De Lisle *v.* Priestman, 1 P. A. Browne 176, was in the

[Davis v. Funk.]

Philadelphia Court of Common Pleas. The court charged the jury that where no time was specified for redemption, the pledge (stock) could not be sold without notice to the person depositing it. It is true, the court said further to the jury, "But if you think the stock was pledged for a *fixed* period of time, your verdict should be for the defendants." But as the jury found that no time was fixed, the direction of the court upon that state of facts became of no importance.

2 Kent Com. 582, is cited as stating the right to be to sell without judicial proceeding or giving *notice to redeem*, and as not stating that the sale must be at auction, or that there must be notice of the time and place.

The cases cited in the Commentary are—Tucker *v.* Wilson, 1 P. Wms. 261; 5 Bro. P. C. 193; and Lockwood *v.* Ewer, 2 Atk. R. 303, 9 Mod. 278. Chancellor Kent adds, notice to the party in such case is however indispensable: this was conceded in Tucker *v.* Wilson. In the former of these cases there was express notice given of both the time and place of sale, and that in the latter there was no sale. Chancellor Kent adds, in the same section, " But the creditor will be held at his peril to deal fairly and justly with the pledge, both as *to the time of the notice and the manner of the sale.*" And in note to same page it is further stated, " An agreement that the pledge may be sold without notice, is not an agreement that it may be sold without demanding payment of the debt: 2 Comst. 443.

In Chitty on Contracts, the authorities cited in section 475, are the same as have already been commented on, and do not give the right to the pawnee to sell without due notice. See also, Story on Bailments, § 310; 2 Story Eq. Juris., § 1008; Stearns *v.* Marsh, 4 Denio 227; Hawkins *v.* McCullough, 12 Barb. 103.

The defendant in error submits :—

1. That the defendant had no right to sell the note held as security. That his duty was to retain and collect, and account for it.

2. That if he had any right to sell, he was bound to have given notice of the time and place of sale, and if so, there was no error in the charge of the court below.

The opinion of the court was delivered, May 6th 1861, by

THOMPSON, J.—No question was made on the trial below as to the form of action, and there is nothing on the record to raise it now. That trover will lie for a wrongful conversion of bonds, bills, notes, stocks, title-papers, and the like, has been too often determined by the courts to be now doubted: Biddle *v.* Bayard, 1 Harris 150; Pittsburgh and Connellsville Railroad Company *v.*

[Davis *v.* Funk.]

Barker, 5 Casey 160; Lockwood *v.* Bull, 1 Cowen 322; Stearns *v.* Marsh, 4 Denio 227.

The note, for the recovery of which this action was brought, was pledged by a broker, with whom it had been left to be negotiated, for a loan to himself, and, on default of payment, it was sold for what it would bring,—being less by some $500 than its face, which called for $1100. The plaintiff, the administrator of the original owner, having tendered the advance made by the pledgee, the defendant, to the pledgor, $490, brought suit to recover the difference between that sum and the face of the note.

On the trial below, two points were made and discussed. First, could the pledgee, in the absence of a contract to sell, on default of payment—sell the security to pay the debt, and was such a contract implied in that sort of bailment? This point I understand the court to have affirmed, and to have put the case on the next point, now to be stated, and that was: could such a sale be made without notice to the pledgor of the time and place of the sale? This he held to be necessary, and this must, under the charge, have been the ground upon which the plaintiff got a verdict.

This being our understanding of the charge, we cannot discuss the first point, for it was with the plaintiff in error; and we leave it without the expression of any opinion in regard to the law of it, and proceed to dispose of the second question, which regards the duty imposed by law on the bailee of a *pawn* or *pledge* to give notice to the pledgor of an intent to sell, and of the time and place, without regard to the question of whether the *pawnee* of a chose in action may sell it or not, as may be done in case of merchantable commodities pledged or pawned. That point is not before us.

We are clearly of opinion that the learned judge of the District Court was right in ruling that the pledgor was bound to give notice of an intent to sell after default of payment, and of the time and place of sale, in the absence of a contract to sell, *ex mero motu.* The authorities seem uniform as to this. In Stearns *v.* Marsh, 4 Denio 227, Mr. Justice Jewett says: "As the law now is, the pledgee may file a bill in chancery for a foreclosure, and proceed to a judicial sale, or he may sell without judicial process, upon giving reasonable notice to the pledgor to redeem, and of the intended sale;" and to the same effect is 2 Kent 581, 582, 583; Story on Bailments, § 310; Story on Contracts, § 723; 2 Story's Eq. Juris., § 1008. So also is the case of Lewis *v.* Graham, New York City Com. Pleas, 5 Am. Law Reg. 368.

The cases of Wilson *v.* Tucker, 1 P. Wms. 261, and also reported in 1 Bro. Par. C. 494, by the name of Wilson *v.* Tooker, administrator of Thynne, and the case of De Lisle *v.* Priestman,

[Davis *v.* Funk.]

1 P. A. Browne 176, cited as in conflict with the above principles, are not so, as has been well shown by Judge Stroud, in an able opinion in another aspect of this case, to be found in 7 Am. Law Reg. 483.

The rule is commended by every consideration of fair dealing. At best, the remedy is very summary, and operates against the property of needy creditors generally. It is but just, therefore, that an opportunity to redeem should be allowed to the last; or, if unable to accomplish that desirable end, that the debtor may have an opportunity to procure the attendance of bidders, to prevent the sacrifice of his property; or collusive sales to interested parties. This assimilates the sale somewhat to a judicial sale, where public notice of time and place is always a prerequisite to its validity.

As we see no error in any part of the charge fairly before us, we must affirm the judgment.

Judgment affirmed.