## Diller *versus* Brubaker.

1. A holder of collateral security cannot appropriate it in satisfaction of the debt at his own option, unless in pursuance of a contract.

2. The security cannot be sold without notice to the pledgor, that he may redeem it; the notice must specify the time and place of sale, which must be by public vendue.

3. In " accord and satisfaction," it must appear that the satisfaction was advantageous to the plaintiff, and it must be averred that the satisfaction was accepted.

4. A trustee is bound to put his *cestui que trust* in possession of a full and true state of his affairs, before any settlement will bind.

5. The law discountenances all but the most open and satisfactory dealing between trustee and *cestui que trust*.

6. It is essential to an estoppel that the party should be misled or injured.

APPEAL from the decree of the Court of Common Pleas of *Lancaster county ;* In Equity ; by Peter Diller and Sarah his wife in her right.

Peter Diller and wife filed their bill against John R. Brubaker and Philip Brubaker, setting forth that Mrs. Diller borrowed from defendants $1000 on a pledge of eighty shares of the stock of the Atlantic and Ohio Telegraph Company, Peter Diller at the same time giving his note for the sum ; averring payments of interest and receipts of dividends in excess of the loan and interest, and praying for an account and retransfer of the stock. The

[Diller v. Brubaker.]

defendants answered, averring countervailing facts, and "a full settlement," denying liability, &c. There was a general replication, proofs were taken, and the case came up on the pleadings and proof.

On the 10th of October 1855, Diller wrote to John Brubaker, saying, he wished "some person to advance me money on twenty or thirty shares" of the stock, at $25 per share, to be returned in four or five months; "or if after holding the stock awhile, I have no objections to their keeping the stock." Afterwards the loan was made from Brubaker, and the following note and receipt given:—

"Nine months after date, I promise to pay to John R. Brubaker and Philip Brubaker, or order, their heirs or assigns, the sum of One Thousand Dollars, lawful money, without defalcation, for value received, with interest till paid, at the rate of 9 per cent. per annum. Witness my hand and seal, this 31st day of October, A. D. 1855.

"PETER DILLER, [L. S.]"

"Received, Philadelphia, October 31st 1855, of Mrs. Sarah Diller, a certificate, No. 703, for eighty shares of the stock of the Atlantic and Ohio Telegraph Company, which I hold as collateral security for the payment of One Thousand Dollars, loaned her this day, with interest until paid.

"JOHN R. BRUBAKER."

On the 14th of May 1861, Brubaker transferred sixty-three shares of his own stock to D. Brooks. On the 16th of June, by power of attorney, he transferred Mrs. Diller's eighty shares to himself. On the 8th of July 1862, he transferred twenty shares, part of the eighty, to Sarah Vogdes.

On the 4th of May 1863, Diller, by writing, directed Brubaker to transfer sixty shares to Raley, "on his paying you $1000; also adjust with Raley the interest of the loan and dividend over the stock as you may think just and right." The order being sent by Raley, Brubaker sent the letter given below, which being shown to Diller, he wrote the memorandum at the bottom:—

"New Holland, May 6th 1863.

"R. F. Raley,
    "Dear Sir:—

"I received yours of 5th inst., enclosing an order from P. Diller for the transfer of sixty shares of Atlantic and Ohio Telegraph stock, which I cannot now do, as the money advanced was due seven years ago. Owing to this, and not expecting that he would ever redeem it, and not wishing to have nearly all my funds invested in fancy stock, I sold mine for 18.25, and had his, after transferring twenty shares to his sister Sarah, retaining sixty

[Diller *v.* Brubaker.]

shares, which at the rate I sold mine, and the money paid over to Sarah, made the amount of my claim. Now, I think, in justice, he should not ask it; I know that I would not. The stock has advanced, that is true; but suppose we would reverse the case, and the stock had been destroyed. How—where should I look to for my claim? Would it be fair that I should risk my money without having some benefit of the advance? But since he has seen hard times, I will do for him what no sane man would do—I will make over and transfer to you for him, twenty shares as at present. I expect to visit Philadelphia some time in June, so you may settle with him for that much.

                              " Yours,
                              "J. R. BRUBAKER."

" R. F. Raley has settled with me for the above twenty shares; please transfer to him.

                              " SARAH DILLER,
                              " per P. DILLER."

On receiving this order, Raley sold the twenty shares for $800, which he paid to Diller; and, May 25th, returned to Brubaker his letter of the 6th with the appended order, telling him he had paid Diller for the stock, and asking a power of attorney to transfer; which was sent. Diller then wrote to Brubaker:—

                              " Philadelphia, May 26th 1863.
" Mr. J. R. Brubaker,
     " " Dear Sir:—
" When on a visit to this place a few weeks since, I requested Mr. Raley to state to you that I was ready to pay you the money borrowed some years since. .

" Your reply to his letter was handed me, and I was completely taken aback. I have always taken, and believe you to be an honest and worthy man—and will still think so.

" The loan was made with honest purpose, and would have been returned, if my life had been spared, under any and all circumstances; and further, if our postal arrangements had not been interrupted, I should have satisfied you of my ability to do so before this. To your inquiry of where you should get your money in the case the stock should prove worthless, I will let you to answer, when I tell you I came to New York with 286 bales of cotton weighing 142,580 lbs., in which I am interested, and as regards your making me a present of twenty shares, it looks well on paper, but will not do to talk about. I sold the twenty shares, the receipt of which is hereby acknowledged. I have acknowledgments from you at home, and will bring them with me in the fall, when we will settle. this matter to our mutual advantage. However, as a compromise, if you will transfer to Sarah Vogdes

ten shares, and return my note to Raley, I will be satisfied; and you may retain the amounts above $1000 and all interests as a present for your kindness.

"Yours, &c.,

"P. DILLER."

On the 2d of June 1863, the twenty shares sold by Raley were transferred to Bates, and the same day twenty shares to Philip. Brubaker—John Brubaker still retaining twenty shares.

Raley, in his testimony, amongst other things, said:—

"I understood the settlement between Mr. Brubaker and Mr. Diller, through me, to be a settlement in full. Mr. Diller made objections to the terms of the settlement as being hard, but I thought he accepted them, and said he would write to Mr. Brubaker; I would not have paid for the stock before I received the certificate from Mr. Brubaker, if I had thought that it was still an unsettled matter. There was not a great deal said at the time of signing the order; I communicated the letter to him as the answer of Mr. Brubaker, to the claim made upon him at Mr. Diller's instance." * * *

"At the time of signing the order, before the order was signed —before I had paid for the stock, and before the matter was finally settled, as I thought, Mr. Diller said that if Mr. Brubaker would transfer to Sarah W. Vogdes ten shares of stock in addition to this twenty he would settle in full. After he signed the paper, he said he would write to Mr. Brubaker, but he did not say what he would write."

He also said, "Diller did not acquiesce in the terms of Brubaker's settlement" * * "in so many words, but from what he said and did, I gathered the impression that he did, and I paid money on it."

The court below (Long, P. J.) was of opinion that "the matter in controversy was settled and compromised by the parties," and dismissed the bill, which was the error assigned.

*Franklin* and *Ellmaker*, for appellants.—On the transfer of the stock the legal title passed to Brubaker as trustee for Mrs. Diller: Wilson *v.* Little, 2 Comstock, N. Y. R. 443; Dykers *v.* Allen, 7 Hill 497; Story on Bail. §§ 308, 318, 319; Corteylou *v.* Lansing, 2 Caines' Cas. 200; Garlick *v.* James, 12 Johns. 146; 2 Kent Com. 581; 2 Story's Eq., § 1019; Middlesex Bank *v.* Minot, 4 Metcalf 325; Richards *v.* Davis, D. C. Phila., 7 Am. Law Reg. 483.

Did the transaction of May 25th 1863, amount to an accord and satisfaction? To give to such a transaction the force and effect of an accord and satisfaction, the intention of the parties so to make it must be positively expressed or necessarily implied

[Diller *v*. Brubaker.]

from the character and features of it. Equivocal words or acts will not be allowed to have the effect of estopping a party from asserting his rights. But if the transaction were intended as a final settlement, plaintiffs are not bound by it, because the letter of Brubaker to Raley, on the faith of which Diller acted, contains a misstatement as well as suppression of the facts by which Diller was deceived, and no account or statement was furnished to enable Diller to judge of the state of the accounts between them: 1 Story's Eq., §§ 217, 218, 220, 222; Sitgreaves *v*. Bank, 13 Wright 359; Salkeld *v*. Vernon, 1 Eden 64; Witman's Appeal, 4 Casey 378; Schoch's Appeal, 9 Id. 351; Berryhill's Appeal, 11 Id. 245.

*J. E. Hiester* and *W. W. Brown*, for appellees.—The stock was not a naked pledge. It was a pledge coupled with an agreement, authorizing the pledgee, at his option, to keep the pledge at its value, which divested it of those incidents which the law attaches to naked pledges.

The question of settlement was raised by the answer, which was responsive to the bill, and must be overcome by counter evidence of two witnesses, or of one witness, and strong corroborating circumstances: Story's Equity Plead., § 849; 2 Daniel Ch. Prac. 10, 19; Hart *v*. Ten Eyck, 2 Johns. Chan. 92; Eberly *v*. Groff, 9 Harris 256. This has not been done, and the answer is conclusive.

The opinion of the court was delivered, June 25th 1866, by

THOMPSON, J.—We need not go back of the cases of Davis *v*. Funk, 3 Wright 243, and Sitgreaves *v*. The Bank, 13 Wright 359, for the doctrine that a pledgee or holder of a collateral security cannot appropriate it in satisfaction of the debt intended to be secured, at his own option, unless in pursuance of a contract to that effect, nor sell it without first giving notice to the pledgor of his intention to do so, in order that he may have an opportunity to redeem it if he desires. The sale must be public when it is made, and the notice must specify both time and place. That this is the law of this species of bailment admits of no doubt. It is the same in the civil and common law: Story on Bail. § 319.

The plaintiff's proofs establish beyond controversy the pledge as collateral, of eighty shares of the Atlantic and Ohio Telegraph Co. stock, held by Mrs. Diller, to John R. Brubaker, one of the defendants, as security for $1000 loaned to her, and in the receipt for which, the latter stipulates, "I hold as collateral security for the payment of one thousand dollars loaned her this day, with interest until paid." Then follows the note of Peter Diller for the money loaned by J. R. & Philip Brubaker, payable in nine months, with interest at the rate of 9 per cent. per annum. This

[Diller v. Brubaker.]

receipt and note bear date at the same time, to wit : October 31st 1855. The interest was regularly paid for several years and until Diller went South. About the 17th June 1861, pursuant to a power of attorney accompanying the certificate of stock, a transfer of the stock by the attorney in fact of Mrs. Diller was made to J. R. Brubaker. Of course the blank power was filled up with the name of the attorney by the holders of the certificate. Brubaker, in 1862, transferred twenty shares of the stock to Mrs. Vogdes, and subsequently other twenty shares to the plaintiffs. The remaining forty shares and dividends received constitute the matter in controversy in this bill.

On May 4th, Peter Diller authorized R. F. Raley to settle up and pay off his note held by the defendants, and wrote to John R. Brubaker to this effect, requesting him to settle with Raley about the note and interest, and adjust the account of dividends and stock as he might think just and right. On the presentation by Raley of an order for the stock, and an offer to pay the note and settle for the dividends, Brubaker declined doing either, claiming the stock as his own, excepting the twenty shares transferred to Mrs. Vodges. The grounds relied on to justify the defendants were entirely insufficient, and so held by the court below. The principal one was, that by the terms of the pledge the defendants, " after holding the stock awhile,"—how long is not said—might treat the right to redeem as abandoned, and appropriate the stock in payment of the note. But nothing of this is to be found in the receipt given for the stock dated the 31st of October. That contains the contract on this point. By that the defendant J. R. Brubaker was to hold the stock as collateral for the loan. Nothing more is said as to its disposition. This left it subject to the law of the pledge. This, we have seen, would authorize a sale of it after the note fell due, upon notice of an intention to sell, or under proceedings in court. The date of the contract is the 31st of October, not the 10th. The letter of that date contained a proposition that if a loan could be effected he would pledge stock, which he had no objection, after it was held awhile and the loan not paid, might be kept by the lender. This was not a proposition specially made to the defendants, nor was it ever accepted by them. Different terms were stipulated for, as we have seen by the last contract, and they must control in the absence of anything to impeach them.

The allegation that all was settled by the transfer of twenty shares of the stock to Mrs. Vogdes, and a payment of money to her, without stating any amount, amounts to nothing in the absence of testimony to show authority to make such settlement. Indeed, this idea seems to be entirely inconsistent with other statements in the letter of J. R. Brubaker in which this appears, and which would not have been evidence at all but for a subse-

quent transaction endorsed on it by Diller. Some of these state-
ments are to the effect that he (J. R. Brubaker) did not expect
the stock would be redeemed ; that he had sold his own and kept
the plaintiff's ; and for the purpose of holding the plaintiff's he
sold his at a low stage of the market, and was willing to credit
them at the same rate at which he sold his. All this is incon-
sistent with the idea of a previous payment. So the court below
thought, and in this we agree. The matter principally relied on
by the defendants to defeat the plaintiff's claim to an account, is
that there was a settlement of the stock and loan in May 1863.
In other words, there was an accord and satisfaction between the
parties.

But we think the evidence of this is insufficient, legal difficulties
being out of the way. There are numerous authorities that in
" accord and satisfaction," it must appear that the satisfaction
made was advantageous to the plaintiff. The instance given
illustrates the idea, namely, the restoring to the plaintiff his own
property, is not sufficient to support the plea. Nor the payment
of an inferior for a greater sum and the like. For the doctrine
on the point, see 1 Bac. Abr. tit. *Accord and Satisfaction*, A. ;
Dyer R. 75 ; 5 East 230 ; 1 Strange 426 ; 2 T. R. 24 ; 11
East 390 ; 5 Day 360 ; 1 Root 426 ; 1 Wend. 164 ; 3 Id. 66 ;
14 Id. 116 ; 3 J. J. Marshall 497. So it must be averred that
the satisfaction was accepted : 3 Wright 147.

Neither the accord nor the satisfaction was proved. The stock
was not offered on the terms of a settlement of accounts, nor so
received. Nor was the note the consideration for the pledge
returned or tendered to the plaintiffs. The defendants have no
case on the footing of " accord and satisfaction." But waiving
the want of a formal plea, does the evidence disclose a case which
in equity amounts to a release of the plaintiffs' right to call for an
account, because of any supposed settlement in May 1863 ? We
may as well say just here that we do not think it does ; and this
was the sole ground upon which the complainants' bill was dis-
missed in the court below. The twenty shares then receipted by the
plaintiffs were not offered on the terms of settlement, but as a gift
or present. It was so offered in reply to the plaintiff's request for
a settlement, and his offer to satisfy his notes by credits and pay-
ments. They were not receipted upon any such express terms in
the receipt, but upon a claim of ownership. Nor is there anything
to the contrary established by the oral evidence. Raley, who
acted in this matter between the parties, notwithstanding some
pressure on the point, does not go to anything like the length of
proving a settlement by a receipt of these shares of stock. He
says he " thought" it was so received, that that was his " impres-
sion." That Diller " did not say so in so many words, but from
what he said and did, I gathered the impression that he did

[Diller *v.* Brubaker.]

acquiesce in the settlement." This was all inference which the witness could not draw. We have nothing else from Raley, and he is the only witness that says anything upon the subject. Neither does his testimony, any more than the receipt, make out a settlement.

The declaration of Diller on that occasion as proved by the witness shows the contrary. He said he would settle if Brubaker would transfer ten shares more of the stock to Mrs. Vogdes, and that he would write to Brubaker on the subject. No word escaped him that we can discover to the effect that he considered the shares offered and received as a settlement of his claim in full. Accordingly, on the day following the date of Raley's letter enclosing Diller's order for the twenty shares of stock, he (Diller) did write to J. R. Brubaker, but so far from acknowledging a settlement, he proposed one which was not accepted or noticed by the latter in any manner, nor was it followed by insisting on the alleged settlement, and offering to give up Diller's note. That is still held by the defendants. The inference from this can be none other, I think, than that no settlement was completed. The expression that Diller thought the terms of settlement " hard," is not proved to have been made by him at all. It is obviously simply given by the witness as his own inference on the subject, but even if made, it would avail little in favour of the defendants in the face of the undoubted fact that a settlement was due between the parties, and had not been previously made. If the transaction had been intended as a final settlement between the parties, why was it not so stated in the receipt ? Raley knew enough for this, so did Brubaker, yet he never complained that it was not so stated, nor afterwards wrote or said a word affirming or disaffirming it. If it was meant as a mode of raising an implication of settlement, it will not avail. A trustee is bound to put his *cestui que trust* in possession of the full and true state of his affairs, before any form of settlement will bind. It is the policy of the law to discountenance all but the most open and satisfactory dealing between parties standing in the attitude to each other of trustee and *cestui que trust*. They don't deal at arms' length as strangers. That was a mistake made by defendants here. Nothing could be fairer than the plaintiffs' offer to pay off the note and interest accrued, and get back the stock, and an account of the dividends received. This is what they were entitled to by law, unless the trust was clearly otherwise arranged and settled by the parties. We see no evidence that it was so arranged, and the plaintiffs are entitled to the remedy they have invoked.

The argument that the receipt of the twenty shares operates to estop the plaintiffs from asking an account needs no effort to answer it. It is not shown wherein the defendants were misled or injured by it, even if they believed in it. This is an essential to an estop-

[Diller *v.* Brubaker.]

pel. If the transaction of May 1863 did not operate as a release, it could not as an estoppel. The necessary evidence is wanting entirely for that. We see nothing which bars the plaintiffs of their right to an account and relief sought. The defendants are entitled to a credit of the number of shares out of the whole number transferred to them to the extent of the number they have retransferred to the plaintiffs or on their order, and the plaintiffs to a credit against the principal and interest remaining due on Diller's note of the dividends received by the defendants on the stock, and on the plaintiffs paying or satisfying the balance of the debt and interest in full due the defendants, then they will be entitled to a retransfer of the remaining stock, and payment of any excess of dividends over and·above paying the note and interest, if any exists.

The decree of the Court of Common Pleas is reversed, and the record is remitted to the court below, with directions to enter the proper decree, and appoint a master to take and report an account; the respondents to pay the costs of this appeal.