## Schwartz, Appellant, v. Sutton et al.

Argued December 8, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Alexander Conn,* for appellant.—The notice of sale must state the time when, the place where and the manner in which the sale is to be conducted: Biddle & Co. v. Brown, 8 Pa. D. & C. 579; Pearson v. Kurtz Bros., 3 Pa. D. & C. 303; Learock v. Paxon, 208 Pa. 602; Fitchthorne v. Barclay, 14 Pa. D. & C. 83; Berberich's Est., 257 Pa. 181.

*Thomas C. Egan,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellees.—The question raised by plaintiff was not suggested in the court below and cannot be raised here: Grange Nat. Bank v. Collman, 306 Pa. 200.

Counsel was apparently satisfied with the charge and cannot now be heard to question it: Raymer v. Pierce, 301 Pa. 383.

OPINION BY MR. JUSTICE SCHAFFER, January 16, 1933:

In this action plaintiff seeks recovery of damages from defendants, who are stockbrokers, for their alleged conversion of stocks belonging to him. The trial judge submitted the case to the jury, who found in defendants' favor, and we have this appeal by plaintiff.

The testimony presents features in stock dealings somewhat out of the ordinary. Defendants had in their employ as a "customer's man" one Gittleman. At the time of the transactions upon which we are to pass judgment, he had been in their service but a very short time. Plaintiff is his cousin. On October 24, 1929, during the stock market panic, plaintiff gave an order to Gittleman to purchase for him 200 shares of United Gas Improvement Company stock at $39 per share or better. Defendants made the purchase on the New York Stock Exchange at $37 per share, a total cost of $7,430. At the time he gave the order, plaintiff did not put defendants in funds to make the purchase. He did not pay them anything. He did not know them and had never dealt with them before, although he had theretofore traded in stocks through other brokers by whom his cousin was employed. On the day of the purchase sixteen million shares were sold on the New York Exchange. On the day following the execution of his order, plaintiff went to New York, paying no attention to his purchase. On that day the stock market showed further declines and Gittleman called plaintiff on the telephone and finding him away, spoke to his brother, telling him defendants required collateral for the purchase made. The brother offered to put up 100 shares of Patino Mines stock and 100 shares of Aviation Corporation stock. After this conversation, Gittleman went to the place of business of the brothers and procured the certificates. They were not endorsed and no power of attorney to transfer them was turned over. The Patino Mines stock was registered in the name of plaintiff, the Aviation stock in the brother's name.

On the following day on defendants' demand, the two certificates were duly endorsed. These stocks were not collateral acceptable to banks. On the 28th, at the direction of defendants' manager, Gittleman called plaintiff on the telephone and informed him that the stocks he had turned over were not satisfactory and that he

would have to give other stock or cash. Plaintiff answered that he would try to call and see defendants either that afternoon or the following day. He did not call in the afternoon and on, the following day, the stock market decline becoming worse, the defendants sold on the New York Stock Exchange the United Gas Improvement stock for $23¼ per share and the Patino Mines stock for $24⅞ per share. The result of the sale of the United Gas Improvement stock and the Patino Mines stock was a credit to plaintiff's account of $7,091.20 against the debit of $7,430, leaving a balance due by plaintiff to defendants of $338.80, for which the latter retained as security and unsold the 100 shares of Aviation Corporation stock.

Plaintiff testified that he received no notice from defendants of their intention to sell his stocks. This was flatly contradicted by Williams, defendants' manager, and by the latter's secretary, both of whom testified that plaintiff was notified that unless he put up the necessary marginal cash or satisfactory collateral, his stocks would be sold. In his telephone conversations with plaintiff, Williams notified him that he must deliver to defendants either forty per cent of the purchase price of the stock he had bought or its equivalent in marketable securities or he would be sold out. Plaintiff paid no attention to these demands. He denied that he had any telephone conversations with Williams or his secretary. Plaintiff testified that on the morning the stocks were sold he went to defendants' office with a check to pay defendants what he owed them. This was denied by Williams and his secretary. The record shows that on that day plaintiff did not have in bank sufficient funds to meet a check for the amount of his indebtedness to defendants.

Plaintiff now argues that no notice was given to him by defendants of the time and place of sale of his securities and he calls to our attention Meyer, The Law of Stockbrokers and Stock Exchanges, pages 369 et seq.,

and Dos Passos on Stockbrokers and Stock Exchanges, volume 1, page 347, in which the rule is stated to be that there must be notice of the time and place of sale. He cites also our own cases of Diller v. Brubaker, 52 Pa. 498; Conyngham's App., 57 Pa. 474; Learock v. Paxson, 208 Pa. 602; Berberich's Est., 257 Pa. 181; Pearson v. Kurtz, 280 Pa. 34. This, however, is not the position he assumed on the trial; there he presented a point for charge to the effect that the notice of intention to sell must be a reasonable one. No mention was made by him of the requirement as to time and place of sale. Affirming his point and adopting this view in his general charge, the trial judge submitted the question of the reasonableness of the notice to the jury, instructing them that if they believed defendants' testimony, they could find the notice reasonable. By their verdict the jury determined that the notice given was reasonable. Having assumed on the trial that all that was required was reasonable notice, and having requested the judge to so charge, plaintiff cannot now say that it was error for the judge to charge as he requested and that he was entitled to specific notice of the time and place of sale: Hubley v. Vanhorne, 7 S. & R. 185; Benson and West v. Maxwell, 105 Pa. 274; Silliman v. Whitmer, 196 Pa. 363; Marshall v. Carr, 275 Pa. 86; Sebring v. Bell Telephone Co., 275 Pa. 131; Mitchell v. City of New Castle, 275 Pa. 426.

Complaint is made that the charge of the trial judge was not an impartial presentation of the case. When the circumstances connected with the transaction and the conflicting testimony are taken into account, our reading of the charge does not satisfy us that this criticism is well founded.

The judgment is affirmed.