## Wilson, to use, v. Prudential Insurance Company of America

*Arnold & Chaplin*, for plaintiff.

*F. Cortez Bell*, *W. Albert Ramey* and *Abe J. Goldin*, for defendant.

SMITH, P. J., August 7, 1935.—This is an action of assumpsit brought by Mrs. S. Canfield Wilson, now to the use of Cloyd B. Wilson, against the Prudential Insurance Company of America. The defendant has filed a statutory demurrer.

It appears that Ralph M. Peterman was the insured in a policy of insurance with the defendant company, and in 1920 having borrowed from Mrs. S. Canfield Wilson the sum of $400 and given his judgment note therefor, he assigned the policy to Mrs. Wilson, the assignment being on the company's printed form and having been duly filed with the company and notice thereof accepted, and it having been joined in by the insured's wife, who was then and is now the named beneficiary. The relevant portion of the assignment reads as follows: "We hereby assign and transfer . . . the policy of insurance known as No. 2625740, issued by the Prudential Insurance Company of America, upon the life of R. M. Peterman, . . . as interest may appear, subject to the conditions of the said policy and the rules and regulations of said company". Mrs. S. Canfield Wilson died in 1923 and her will included the following language: "I give and bequeath to my son, Cloyd B. Wilson, all of my monies and securities of whatsoever kind". Cloyd B. Wilson is also her executor and has possession of the insurance policy.

On February 13, 1935, Cloyd B. Wilson, through his attorneys, Arnold & Chaplin, offered the surrender of the policy to the defendant company, and asked for payment of the cash surrender value thereof. In the exchange of letters which followed, this demand was renewed, and the company refused to accept the surrender of the policy and to pay the cash surrender value, taking the position that the policy was not absolutely assigned, and that the surrender would therefore not be accepted without the joining of the insured and the beneficiary in the request. On March 20, 1935, the use-plaintiff entered judgment in the Court of Common Pleas of Clearfield County against Ralph M. Peterman upon the judgment note in question, and issued a sci. fa. thereon upon which litigation is now in progress over the present amount of the indebtedness on the note.

The defendant's statutory demurrer, after the elimination of a formal defect now cured by amendment, raises

two questions: First, whether the plaintiff's pleadings show him to have title to the note and the right to collect upon the collateral security therefor, and second, whether the use-plaintiff has the right to surrender the policy for its cash value without the consent of the insured and beneficiary.

In our opinion the defendant cannot raise the first question in this proceeding. Possession of the policy, the entry of the judgment to the plaintiff's use, the fact that there is an express bequest in Mrs. Wilson's will under which title to the note is claimed, and the lapse of time since Mrs. Wilson's death, in the absence of an adjudication and distribution by the orphans' court, give the use-plaintiff sufficient title against all except persons claiming as distributees or creditors whose claims would have to be asserted in the orphans' court.

Passing to the second question, the plaintiff contends that the assignment is absolute. We think, however, that the words, "as interest may appear", regardless of their exact construction, give notice of a limitation upon the operation of the assignment and show that it is less than an absolute one: 37 C. J. 427; Barrett v. Northwestern Mutual Life Ins. Co., 99 Iowa 637, 68 N. W. 906. As admittedly the assignment was for the purpose of securing payment of an indebtedness, the general property in the policy still remained in the insured: Clark v. Equitable Life Assurance Society of United States, 133 Fed. 816.

The plaintiff vigorously contends that the words, "as interest may appear" limit only the amount of the plaintiff's recovery, but do not limit the interest assigned in the policy which is the entire interest of the insured; that is, that the entire interest of the insured passed, including the right to elect to surrender the policy and take the cash surrender value, and that the plaintiff may therefore collect the entire cash surrender value, take out of it his debt, and then account to the debtor for the surplus. The plaintiff particularly cites the case of Mutual Benefit

Life Ins. Co. v. First National Bank et al., 160 Ky. 538, 169 S. W. 1028, which so holds, and in which the distinction is discussed between various cases, in some of which the language of the policy made the cash surrender value payable to the insured, while in others it is made payable merely to the holder or, as here, merely made payable upon surrender without stating to whom. However, the decisions on this are not uniform, and many can be found to the contrary: Manton v. Robinson, 19 R. I. 405, 37 Atl. 8; 49 C. J. 947; Toplitz et al. v. Bauer et al., 161 N. Y. 325, 55 N. E. 1059. While the exact question was not involved, the case of Entwistle v. Travelers Ins. Co., 202 Pa. 141, which involves the interpretation of the word "holder" in this connection, seems somewhat contrary to the plaintiff's contention.

Viewing this as a pledge rather than an absolute assignment, we think the principles relative to a pledgee's duty are relevant: Herr v. Reinoehl, 209 Pa. 483; Entwistle v. Travelers Ins. Co., 202 Pa. 141; Berberich's Estate, 257 Pa. 181; also Manton v. Robinson and Toplitz v. Bauer, supra.

In the case of Berberich's Estate, supra, the court said:

"Reduced to its simplest terms, the relation to the parties to this transaction was that of pledgor and pledgee. No special contract between the parties touching the mode or manner of conducting the business that engaged them having been shown, it was necessarily subject to common law rules and principles, and by these their reciprocal rights and obligations must be determined. Though having certain property rights in the things pledged, the pledgee had no right of disposal except under well defined conditions; and except as these conditions have been fully met, any sale of the pledge by the pledgee must be held to be unlawful conversion of the property. One of these conditions requires that before any sale be made to answer for any default of the pledgor, the pledgee shall give notice to the pledgor or some one standing in interest with him, in order that

opportunity may be afforded him to continue the pledge if he may desire. Upon continued default the pledgee may sell, but, even then, only upon notice that sale will be made, so that opportunity be again afforded the pledgor to protect himself and his property if he can, by redemption or otherwise. . . . In Diller v. Brubaker, 52 Pa. 498, following Davis v. Funk, 39 Pa. 243, and Sitgreaves v. Farmer's Bank, 49 Pa. 359; it is expressly declared that the pledgor cannot appropriate the pledge in satisfaction of the debt intended to be secured at his option, unless in pursuance of a contract to that effect, nor sell it without giving notice to the pledgor of his intention to do so, in order that he may have an opportunity to redeem it if he desire."

It will be noted that the plaintiff does not plead any previous notice to the debtor, who is the insured in the policy, of his intention to demand its cash surrender value. As the case comes before us, therefore, it is an attempt to convert pledged property without having given the pledgor the opportunity to redeem the same. No contract between the pledgor and pledgee is pleaded under which the right to sell or convert without notice is given, nor is any other right of disposition claimed by express contract. The matter is therefore governed by the general law of bailment as it applies to pledges. The plaintiff seeks to treat the policy as if it were a mere indebtedness on the part of the insurance company; whereas in fact it is a contract of insurance, and the right asserted, while optional under the policy, is one which would by its nature defeat the primary purpose of the contract and deprive the insured of valuable rights without opportunity of protecting himself.

The plaintiff argues that unless his construction is adopted it would be possible for the defendant company, by its refusal to accept surrender, to keep the insurance provision in force and absorb the cash surrender value in time, through application of it to future premiums. It is sufficient answer to this argument that the plaintiff

could probably, in a proper proceeding to which both the debtor and the insurance company were parties, obtain relief against such diminution of his security, and obtain an appropriate decree requiring the insured in the alternative either to use his borrowing power on the policy for the purpose of paying the debt, or to join in the execution of an instrument of surrender.

The practical effect, furthermore, of sustaining plaintiff's contention would be that the pledgee would be able to extinguish the valuable rights given the insured in the policy while, as is the case here, the amount of the indebtedness remains the subject of litigation between the parties. For these reasons we think the action set forth in the statement of claim cannot be sustained.

### Order

And now, August 7, 1935, in accordance with opinion filed herewith, the affidavit of defense raising questions of law is hereby sustained, and a period of 15 days is hereby granted to the plaintiff to file a new statement of claim not inconsistent with said opinion; and in the event such new statement of claim shall not be filed, then upon motion of the defendant, judgment shall be entered in favor of the defendant. Exception noted and bill sealed to the plaintiff. From John M. Urey, Clearfield.