## URLING et al. v. FINK et al.
### No. 8164.

Circuit Court of Appeals, Third Circuit.
Argued May 4, 1943.

Decided Feb. 16, 1944.
As Amended Feb. 25, 1944.

---

[7] See H. Conference Rep. No. 356, 69th Cong., 1st Sess., (1939—1 Cum.Bull. (Part 2) 361, 372, 383).

Louis Caplan, of Pittsburgh, Pa. (Sachs & Caplan, of Pittsburgh, Pa., on the brief), for appellants.

Oliver K. Eaton and Harry F. Stambaugh, both of Pittsburgh, Pa., for appellees.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

JONES, Circuit Judge.

The plaintiffs brought suit against the defendants in the District Court for the recovery, in kind, of certain shares of stock which the plaintiffs, as the owners thereof, had pledged as collateral security for a note owing by them to the defendants, or, in the alternative, for damages said to have been suffered by the plaintiffs through the defendants' alleged unlawful sale of the collateral to one Richard T. Jennings, Jr. A trial of the case to the court below without a jury resulted in a judgment for the defendants from which the plaintiffs have appealed. Federal jurisdiction of the case rests upon the diversity of the citizenship of the parties.

The trial court made extensive and comprehensive findings of fact which it is unnecessary for us to restate in detail. The matter whereof the appellants principally complain is the trial court's conclusion of fact that the defendants' sale and Jennings' purchase of the collateral was bona fide. It is their contention that the purported sale to Jennings was in fact a subterfuge whereby the defendants in reality became the purchasers of the pledged stock at their own sale, contrary to law, and that the trial court's findings of fact based upon the direct evidence rightly call for a conclusion that the pledgees' sale of the collateral was fictitious. Accordingly the appellants argue that the trial court's conclusion with respect to the ultimate fact of good faith, being but an inference, may be set aside by us, upon review, if we should conclude on the basis of the supportable findings that the sale was not bona fide. This raises the principal legal question involved on this appeal. There is also a preliminary question as to the extent to which the trial court permitted the defendants, over the plaintiffs' objection, to cross-examine Jennings when he was on the stand as a witness for the plaintiffs.

An appellate federal court's power to reverse a finding of fact made by a trial court, sitting without a jury, is to be determined in keeping with the provisions of Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723 c. On the other hand, the substantive rights of the parties in respect of the pledged stock and the defendants' sale thereof are to be determined (this being a diversity case) by local law. The place of contracting also having been Pennsylvania, as determined by the law of the forum from the instrument containing the pledge, the local law applicable is the substantive law of contracts of Pennsylvania. See Restatement, Conflict of Laws (1934) §§ 311, 346.

The substantive law applicable to the case injects no difficulty. The appellees concede that under the law of Pennsylvania a pledgee may not purchase pledged property at his own sale unless the instrument creating the pledge expressly authorizes him to do so. Cf. Rosenblatt v. Weinman, 230 Pa. 536, 539, 79 A. 710; Diller v. Brubaker, 52 Pa. 498, 502, 91 Am.Dec. 177. Nor do the appellees assert that there was any such authority in this case. They maintain that the unquestioned rule of local law just referred to has no applicability here in the light of the trial court's finding that the sale of the pledged stock by the defendants and its purchase by Jennings was real and in good faith in consequence whereof no question of a purchase of the collateral by the pledgees is present. As the court below drew its conclusion as to the good faith of the transaction from findings based on testimony given by Jennings as a result of the cross-examination to which the plaintiffs objected, we turn at once to the question raised by the appellants in that connection.

The collateral in controversy consisted of shares of stock in seven motion picture theatre companies (all close corporations) in six of which both the plaintiffs and the defendants, as well as Jennings, owned stock. Neither the defendants nor Jennings owned any stock in the remaining company. Jennings was an executive officer of each of the companies in which he owned stock and, as such, he had charge of the company stock certificate and transfer books. The plaintiffs called him to testify to the percentage of the outstanding stock of the theatre companies owned by the plaintiffs on June 16, 1939, as shown by the respective company books in Jennings' charge. He so testified to the plaintiffs' stock ownership on the date specified as shown by the books of the companies.

However, June 16, 1939, was the date of the defendants' alleged sale of the collateral, and on cross-examination Jennings was asked whether he had purchased the plaintiffs' hypothecated stock at a sale thereof on that date. To this, counsel for the plaintiffs objected on the ground that it was not proper cross-examination. The trial judge, commenting that the question was a close one, overruled the objection and permitted the witness to answer. Then followed further inquiry into the sale on redirect examination by the plaintiffs and consequent recross-examination by the defendants to the end that the circumstances attending the sale were fully developed from the witness Jennings.

■ In ascribing error to the trial court's overruling of the plaintiffs' objection to the question first asked of Jennings on cross-examination, the appellants rely upon the rule of evidence that a party on whose behalf a witness is called has a right to restrict the witness' cross-examination to the subjects about which he was interrogated on direct examination. That this procedural rule is applicable to trials in federal courts is hardly open to question. One of the leading cases is Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 129 F. 668, 674, where Judge Sanborn, speaking for the Court of Appeals for the Eighth Circuit, cited a long line of authority in support of the rule, as above stated, and said that a violation of the right constituted reversible error. Since then the rule has been reiterated and followed in federal courts a number of times without deviation or qualification. De Soto Motor Corporation v. Stewart, 10 Cir., 62 F.2d 914, 917; Farley v. Norfolk & W. Ry. Co., 4 Cir., 14 F.2d 93, 97; Tucker v. United States, 8 Cir., 5 F.2d 818, 823; Heard v. United States, 8 Cir., 255 F. 829, 833; Hales v. Michigan Cent. R. Co., 6 Cir., 200 F. 533, 538.

■■ But the question whether the rule has been violated recurs each time it is asserted that cross-examination, over due objection, transgressed its permissible scope. We do not think that the cross-examination in the present instance so offended. The plaintiffs had sought by direct examination of the witness to establish their ownership of the pledged stock on a day certain according to the books of the companies. Yet on that same day their stock had been sold as the witness knew first-hand. True enough, whether the sale

was valid was yet to be determined. But the witness was in competent possession of information as to matter affecting the plaintiffs' ownership of the stock which they would have let rest on what the company books alone disclosed. It may well be that the plaintiffs intended by their examination to show no more than the percentage of the plaintiffs' interest in the outstanding stock of the companies at the time of the sale. But it is not what the purpose of the interrogator on direct examination may have been but the character of the matter inquired into which determines the scope of proper cross-examination. The subject here opened up by the plaintiffs in direct examination of the witness was their ownership of the stock on a day certain to which issue the sale of their stock on that same day was directly related.

■ Furthermore, the matter most important and relevant to the court's findings so far as the bona fides of the sale was concerned came on the witness' re-cross-examination which was rendered competent and proper by the re-direct examination to which the plaintiffs had subjected the witness apparently as the result of the cross-examination. The situation produced was hardly any different than it would have been had the trial court (which was sitting without a jury) formally stated that as to the matter inquired about concerning the sale, the witness was the witness of the cross-examiner. It was within the discretionary power of the trial court so to do. Substantially, the procedural circumstances involved no more than the order of proof. See Resurrection Gold Min. Co. v. Fortune Gold Min. Co., supra, where the court said at page 675 of 129 F.: "It is discretionary with the court to permit the cross-examiner to do this [i.e., sponsor the witness] at the time he is conducting the cross-examination, because the time and the manner of the trial are within the discretion of the court." We are unable to see wherein the court below erred to the injury of the plaintiffs in the adduction of the proofs at trial.

■ From the evidence adduced the trial court found that on June 16, 1939, the plaintiffs then being in default under their note, the defendants sold the collateral to Jennings for a fair and reasonable price at a private sale without notice to the plaintiffs. That it was the defendants' right so to proceed is unquestioned. In the

event of default by the makers, the note authorized a private sale of the collateral by the pledgees without notice to the pledgors. Such authority was valid and binding under the applicable local law. Appeal of Isaac Jeanes, 116 Pa. 573, 583, 585, 11 A. 862, 2 Am.St.Rep. 624; cf. Read v. Pennsylvania Company, 338 Pa. 389, 392, 12 A.2d 925. The trial court also found that, upon Jennings' purchase of the stock, neither of the defendants had any interest therein save for their rights as pledgees of the stocks from Jennings as security for his note to the defendants in payment of the purchase price.

■ The finding as to the reality of the sale without any right on the part of the defendants to ownership or acquisition of the stock is amply supported by the testimony of Jennings, whom the trial court expressly accredited as it was within its exclusive province to do. From that and other supported findings the trial court drew its conclusion as to the ultimate fact of good faith in the defendants' sale and Jennings' purchase of the stock. In such circumstances, we fail to see where we have any power to draw and enforce a different conclusion. Certainly the trial court's ultimate findings as to the good faith of the transaction was a permissible deduction from other findings which cannot be said to be clearly erroneous, and especially not if we give due regard to the opportunity of the trial court to judge the credibility of the witnesses as Rule 52 of the Rules of Civil Procedure requires us to do. This court has had a number of occasions to comply with the intent and spirit of Rule 52. See Bethlehem Baking Co. v. United States, 3 Cir., 129 F.2d 490, 491; Katz Underwear Co. v. United States, 3 Cir., 127 F.2d 965, 966; Cooper v. Brown, 3 Cir., 126 F.2d 874, 879; Art Metal Const. Co. v. Lehigh Structural Steel Co., 3 Cir., 126 F.2d 134, 135; Floridin Co. v. Attapulgus Clay Co., 3 Cir., 125 F.2d 669, 670; Miller, Inc. v. Needham, 3 Cir., 122 F.2d 710, 711;

Smith v. United States, 3 Cir., 121 F.2d 692, 695; Commonwealth Trust Co. v. Reconstruction Finance Corporation, 3 Cir., 120 F.2d 254, 255.

The appellants urge upon us our decision in Kuhn v. Princess Lida of Thurn & Taxis, 3 Cir., 119 F.2d 704, where we reversed the trial court's conclusion as to the reasonable value of the services performed by the plaintiff while acting as attorney for the defendant in respect of a specific tax question. There, the plaintiff had testified in support of his claim to a large number of hours which he had devoted to his client's case and the trial court, finding the time to have been spent on the case, as testified by the plaintiff, arrived at a fee for his services on that basis. Because of the simplicity of the tax question in its pertinent facts, their development and presentation, and the certainty of the well established rule of law applicable (see 119 F.2d at page 707), we held (page 708 of 119 F.2d) that the trial court had unduly enhanced the value of the plaintiff's services by accrediting the difficulty which the plaintiff had unjustifiably endeavored to impute to his task. The effect of the ruling was that, notwithstanding the great length of time the plaintiff had spent on the case, he was entitled, as a matter of law upon a quantum meruit, to no more than a due allowance for the time reasonably necessary in the normal prosecution of the case. The Princess Lida decision was in no sense in derogation of the rule which renders final the competent findings of a trial court.

In the present instance, before we could draw the conclusion which the appellants would have us do, we should find it necessary to overrule material basic findings of fact made by the trial court from substantial oral testimony which that court appraised as being "clear, frank and credible". And that, we are not at liberty to do under the requirements of Rule 52.

The judgment of the District Court is affirmed.