**Melvin COHEN, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 75–0336–CV–W–6.**

United States District Court, W. D. Missouri, W. D.

March 10, 1982.

William H. Pickett, and Don Hutson, Hutson, VanHorn, Schmidt & Hammett, Kansas City, Mo., for plaintiff.

Thomas O. Baker, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER OVERRULING PLAINTIFF'S MOTION FOR NEW TRIAL

SACHS, District Judge.

This motion for new trial in a products liability case presents a significant issue of law with reference to hearsay exception 8(C), Rule 803(8)(C), F.R.Evid., which generally authorizes admission into evidence of "factual findings resulting from an investigation" conducted by a government agency.

A jury brought in a verdict against plaintiff, driver of a vehicle manufactured in 1971 by defendant (General Motors) and sold that year to plaintiff. Plaintiff claims that a defect in the power steering mechanism caused the steering to "lock" in a manner which made it practically impossible for him to avoid collision in 1974 with a parked vehicle. Plaintiff's eye was injured as a result, he contends, in that a scissors attached to a fingernail clipper which he was holding in his left hand punctured the eyeball, causing a trauma-induced cataract and near-blindness in the left eye. The defense centered on two issues: (1) lack of defect in the power steering equipment (similar in design to that of all power steering of all current General Motors cars and most of the vehicles manufactured by others) and (2) lack of causation or credibility of the claim in that plaintiff either injured his eye before the collision or collided with the parked car through inattentive driving unrelated to the steering system. The Court concludes, from hearing the evidence and argument and from the jury requests during the deliberation, that the issue of design defect was very probably never reached by the jury.[1] The significant legal issue at this time, however, does relate to certain evidence pertaining to the alleged defect.

It is plaintiff's contention that the spool valve in the power steering system suddenly locked, probably because a comparatively large metal particle or burr had broken loose under pressure of the power steering fluid, and that there were defects in (1) failing to "debur" the system during manufacture, (2) failing to incorporate a filter in the design, and (3) using a poppet valve which prevented a suddenly locked spool valve from being unlocked by increased pressure on the steering wheel. Defendant acknowledges that metallic contamination is anticipated in the system but contends the steering system is designed to tolerate such contamination. Expert testimony was presented by both sides.

The government investigation which poses an evidentiary question was initiated after complaints were registered with the National Highway Traffic Safety Adminis-

---

1. The jury reviewed (a) photographs showing the place of collision to be considerably distant from the driveway which plaintiff was allegedly attempting to enter and (b) the spool valve from his automobile showing no signs of tell-tale markings which might evidence a plugged valve.

tration (NHTSA) about "sticky" power steering (resulting from unfiltered contaminants not large enough to lock a valve) and occasional reports of locking, supposedly from larger contaminants similar to those which purportedly affected plaintiff's vehicle. Plaintiff relies on a 1973 complaint letter from the Center for Auto Safety (identified by counsel as a Nader organization) which was offered as proof of notice to General Motors prior to the injury to plaintiff and in support of a prayer for punitive damages. Plaintiff also relies on certain admissions by General Motors officials to NHTSA, during the course of the investigation, and in closing argument asserted (in support of punitive damages) that a large award to plaintiff was needed to cause General Motors to change its power steering system by adding a filter. Allegedly similar occurrences were also a part of plaintiff's case, it being plaintiff's contention that related incidents are some proof of defect and notice of defect.

The final document closing out the NHTSA investigation (Def. Exh. 106, referred to as the "closing memorandum") was issued by the Acting Chief, Investigations Division, on October 18, 1977. After reviewing the course of investigation, and noting various findings, a recommendation of closing was made, based on the following "conclusions":

> No trend of lockup, binding or self-steering or of injuries, property damage accidents or other safety-related problems has been demonstrated in the past by the subject steering gear spool valves in the Saginaw power steering gear assemblies. There is no basis for believing that such a trend did, in fact, exist or that one will develop in the future.

The admissibility of the NHTSA report was considered in limine, together with a number of other matters. As reflected by the Court's memorandum of September 14, 1981, the Court's initial inclination was to exclude "agency opinion, based on investigations, absent persuasive authority contrary to the recent [ruling] in *Smith v. Ithaca Corp.*, 612 F.2d 215, 220–3 (5th Cir. 1980)..." The Court's initial view was heavily influenced by Judge Wisdom's rationale in *Ithaca*, and by a preference for keeping litigation as sharply focused as reasonably possible. The Court also acknowledges entertaining a presumption of reliability where there has been litigation-type fact finding, as contrasted with agency investigations which lack adversary hearings.

Subsequent pretrial consideration of the issues and authorities moved the Court to accept at trial the nontraditional type of evidence offered by General Motors. The question still remains rather close, in my view, except for special factors in this case: (1) plaintiff's invitational use of evidence which would render it unfair to exclude the NHTSA report and (2) plaintiff's punitive damage claim. It would seem most unjust to ask a jury to assess a penalty for purported continuing misconduct in manufacturing a defective product without having before it the findings of the federal agency responsible for product safety.

A significant development in the pertinent legal authorities subsequent to my initial expression of views was the ruling by an intermediate appellate court in the New York state system, reversing a judgment for a plaintiff in very similar litigation where the trial court had excluded from evidence the quoted conclusion from the NHTSA report. *Ellsworth v. General Motors Corp.*, 446 N.Y.S.2d 438 (1981). It is conceded that the pertinent federal evidentiary rule is also the state court rule in New York.[2]

---

**2.** The New York ruling deals with the admissibility of the ultimate conclusion in the NHTSA Closing Memorandum. In the present case almost the entire report was offered and admitted in evidence. The Court did exclude, as being excessively prejudicial, the report's reference to a substantial body of pertinent claims in litigation, revealing "no case in which the court found for the plaintiff." Other materials which were submitted to the jury as supportive of the ultimate findings were generally more specific in nature, were necessary to understand the underlying rationale of the conclusions, and do not appear to be currently challenged in the motion for new trial, assuming

The Court has also had an opportunity to review the current federal law applicable to the admissibility of evaluative reports concluding agency investigations.

Federal trial courts most frequently deal with agency findings in Title VII cases. The Court is now aware of a very strong recent ruling in the Ninth Circuit mandating presentation of EEOC findings to a jury in a subsequent employment discrimination case. *Plummer v. Western International Hotels Company, Inc.*, 656 F.2d 502 (9th Cir. 1981). To the extent that a footnote in a Supreme Court opinion may be said to establish a major evidentiary doctrine, it appears that the Supreme Court has given a broad directive for liberal use of agency findings, somewhat at variance with Judge Wisdom's cautious approach in *Ithaca. Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1960, n. 39, 48 L.Ed.2d 416 (1976).

The Advisory Committee's Note on Rule 803(8)(C), indicates that the leading federal evidentiary decision favoring liberal use of evaluative reports has been Judge Goodrich's opinion in *Moran v. Pittsburgh-Des Moines Steel Co.*, 183 F.2d 467 (3rd Cir. 1950), allowing trial use of a report of the Bureau of Mines as to the cause of a gas tank explosion. *Moran* seems inconsistent with the *Ithaca* decision, but served as one of the authorities used by the Fifth Circuit in establishing a strong policy favoring admissibility of EEOC factual conclusions as to employment discrimination. *Smith v. Universal Services, Inc.*, 454 F.2d 154, 158 n. 2 (5th Cir. 1972).

Plaintiff's counsel argues that *Moran* has been superseded by the Federal Rules of Evidence, but the Court does not find any rejection of *Moran* in the text or history of the rule except in the House Judiciary Committee's preference for a narrow reading of the reference to "factual findings." The committee apparently favored excluding conclusory statements by agencies. The Senate Committee on the judiciary took "strong exception" to the comment in the House, and it appears that the more expansive reading is gaining favor. Graham, *Handbook of Federal Evidence*, 844–8; 4 *Weinstein's Evidence* 803–205–6; *U. S. v. AT&T*, 498 F.Supp. 353, 359–360 (D.D.C. 1980). In any event, the statements in the NHTSA report here at issue appear to be neither more nor less conclusory than the EEOC statements which generally are presented to the trier of facts in employment discrimination cases.[3]

Very little Eighth Circuit guidance is available as to the admissibility of evaluative reports under the Federal Rules of Evidence. In a recent case, however, no reversible error was found when the jury had unauthorized access to "a Bureau of Mines report on the fire hazards associated with the use of urethane foam in mines." The Court of Appeals apparently acquiesced in the analysis made by the trial judge, Chief Judge Urbom, who stated that the report " 'was kept out of evidence only because it was not listed on the exhibit list prior to trial...' " *Neville Construction Company v. Cook Paint and Varnish Company*, 671 F.2d 1107 (8th Cir., 1982). This gives some slight indication that the *Moran* rule should be followed in this circuit.

admissibility of the "conclusions" as directed by the New York appellate court.

**3.** A cautionary instruction was given the jury in this case that the result of the NHTSA investigation "is not binding on you. This lawsuit is an independent inquiry. You are hearing testimony that was not or may not have been presented to the government agency. In this lawsuit we are having a hearing in which attorneys for both sides can cross examine witnesses, which may help you in determining the truth in this case. The government agency did not hold such a hearing, under its procedures, and you may consider that in determining how

much weight, if any, to give the findings and actions of the NHTSA. You may consider the extent of the NHTSA investigation, as recited in the report ... and other testimony in this case, and you may give the report as much weight, if any, in your deliberations as you conclude should be given to it." It is hoped that such an instruction may avoid undue reliance on evaluative reports which are admitted into evidence under Rule 803(8)(C). See a comparable jury instruction referred to in *In re Plywood Litigation*, 655 F.2d 627, 637 (5th Cir. 1981).

Plaintiff has urged that one Eighth Circuit decision suggests inadmissibility. *Meder v. Everest & Jennings, Inc.*, 637 F.2d 1182 (8th Cir. 1981). In that case, however, the Court observed that police reports are frequently admissible, but in the particular situation under consideration there was a demonstrated lack of trustworthiness. l.c. 1187–8. In the present case, plaintiff has presented arguments going to the weight of the report. Lack of trustworthiness has not been demonstrated, however, unless one were to gut the rule by insisting that reliable findings can only be made after an adversary hearing, or that the findings must be articulated by a person in the agency who has conducted the investigation.[4]

█ It is thus concluded that there was no error in admitting into evidence the NHTSA Closing Memorandum, and a new trial should not be granted for that reason.

Additional grounds for a new trial may be summarily dealt with. Plaintiff objects to the Court's ruling limiting his examples of complaints regarding the power steering system. The record will reflect that attempts were repeatedly made in advance of trial and during trial to obtain further specification and after lengthy conferences in chambers the Court allowed plaintiff to refer to identified complaints which had some color of similarity. Limitations imposed on cumulative evidence having potential for prolonging the litigation were fully authorized by Rule 403, F.R.Evid.

Plaintiff has been somewhat elusive in presenting this collateral proof, which would in any event have had most pertinence to punitive damages. While some examples of allegedly similar occurrences were located in the records and were presented to the jury, counsel's last words on the subject were to the effect that the "best examples" had been identified in depositions taken before trial. The deposition exhibits were said to have been misplaced

and then relocated, but were never offered at trial.

Counsel do have a point in saying that the number of claims of defect presented to the jury may have seemed unimpressive, as compared with the millions of cars sold with similar power steering systems. If plaintiff simply wished to bolster his numbers, counsel could have referred to 73 allegations of accidents, 39 injuries and 13 fatalities, all cited in the NHTSA report, as well as "402 reports or allegations of power steering lockup and self-steering problems." None of plaintiff's tendered exhibits reach the numerical levels referred to in the report which was in evidence.

█ Contrary to plaintiff's contention, the issue of contributory negligence was not introduced into the case. The credibility of plaintiff's factual reconstruction of events was in issue, however, as were the several ways plaintiff could have injured his eye through inattentive driving, without any power steering problem. The jury was instructed that defendant should prevail if the accident was "not caused in whole or *in part* by a defect in the product." Thus, mere contributory negligence would not have been a bar. Defendant's proposed instructions which may have tended to blur the distinction between contributory negligence, not an issue, and causation-in-fact, which was in issue, were rejected or appropriately modified.

█ Evidence of plaintiff's other complaints and ailments, some of which were the source of litigation, was properly in evidence, and plaintiff had the additional benefit of an instruction that the jury should draw no prejudicial inferences from the fact that he had made claims.

Plaintiff objects to an instruction which he asserts would require the jury to find that the power steering system was in ex-

---

**4.** Plaintiff does argue that in a test drive on which NHTSA apparently relied, the poppet valve had been removed from the vehicle. This had been disclosed to NHTSA in one of the exhibits. There was conflicting expert testimony regarding the effect of removal of that valve, so the jury could disregard the test if it relied on plaintiff's expert. Moreover, the demonstration drive referred to in the report was only one of the matters taken into account in arriving at the NHTSA findings.

actly the same condition when the accident occurred as when it was sold. He contends the proper characterization is "substantially the same." In the context of this case, the verbal difference could have little impact, and there was no request for a modification of phrasing.

The motion for new trial should be overruled.

SO ORDERED.