Mayberry *v.* Blue Ridge Soil Pep, Inc.,
Appellant.

Argued November 29, 1960.   Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Harry P. O'Neill, Jr.,* with him *Frank M. Walsh, Joseph J. McCluskey,* and *Walsh and O'Neill,* for appellant.

*Thomas J. Foley,* with him *Depuy & Hansen,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, January 16, 1961:

Malcolm E. Gramley of the Pennsylvania State Police was standing at a window of the police barracks near Blakeslee looking out on Route 115 in Monroe County when an automobile collision occurred in front of the barracks. A truck traveling from south to north had left the highway and was traversing a stretch of cindered surface which paralleled the road, moving at a speed of 30 miles per hour. Within a few moments this truck crashed into another vehicle also off the highway on the same side as the northbound truck. Next to the barracks on its northern side, and setting back about 100 feet from the highway, there was a large garage easily accessible by a wide driveway, to traffic coming from either direction on Route 115. The location of the southbound truck after the collision supports the inference that it was bound for this garage when it moved away from the highway.

As a result of the collision, the driver of the southbound truck, Harold W. Mayberry, was killed. Frances Mayberry, administratrix of his estate, brought death and survival actions against the Blue Ridge Soil Pep, Inc., owners of the northbound truck. At the trial, the presiding judge directed a verdict for the defendant. The plaintiff moved for a new trial, and the court en banc, after hearing and argument, reversed the action of the trial judge by ordering a new trial. The defendant appealed.

In an appeal of this nature all conflicts in testimony and inferences naturally rising from the testimony must be resolved in favor of the plaintiff. Guided by that standard of interpretation, we conclude from the record that the trial judge erred when he took the case away from the jury and rectified the error when he ordered a new trial.

Although Gramley was an eyewitness to the movements of the Blue Ridge truck before the collision, he did not see the actual impact with the Mayberry truck because the Blue Ridge truck raised considerable dust as it ploughed through the cinders under its wheels.

The lower court, in ordering a new trial, said: "Plaintiff's testimony established that defendant's truck left the north bound lane; ran off the east edge of the highway on to the graveled area in front of the barracks with the right front wheel in a partial lock; traveled forward in a northeastwardly direction intermittently stopping and moving for a distance of 51 feet and finally stopped when it came in contact with decedent's truck then 15 feet off the highway at the far end or northern end of the barracks. Plaintiff's testimony also established that defendant's truck left tire marks in the graveled area for a distance of 51 feet from the point of impact back to the easterly edge of the highway. From this testimony it is a reasonable inference that decedent's truck was off the highway before the defendant's truck and in full view of defendant's truck driver for a sufficient length of time to enable him to avoid the collision if his truck was under proper control."

The record justifies the deduction in the above statement that the Mayberry truck was already in the path of the Blue Ridge truck when the latter was advancing over the cindered area. It was for the jury under these circumstances to determine whether or not the driver of the Blue Ridge truck was traveling at such a

speed and had his truck under such control that he could stop in time to avoid a visible obstruction before him long enough to allow for a safe stoppage.

The highway at the point of collision curved to the left for one traveling northwardly and to the right for one moving in the opposite direction. Gramley, who was thoroughly familiar with the entire locality, testified that a motorist traveling in either direction on the curve would have an unrestricted view of the highway for 200 feet. This being so, why didn't the defendant's driver see the decedent's truck on the driveway ahead of him?

John Nowak, the defendant's driver, testified that the Mayberry truck came out from behind a van also traveling in the same direction, and that, to avoid hitting the Mayberry truck he moved to the right. He said that at the time of the actual collision his two right wheels were off the highway and his two left were on the berm. Gramley contested this testimony. He said that when he saw the defendant's truck just before the collision it was entirely off the highway and moving over the graveled terrain.

In view of this conflict in testimony, plus the circumstances of the accident, plus the physical layout of the scene of the accident, a question of fact arose with regard to responsibility for the accident. This question could only be resolved by the jury.

The defendant company states in its brief: "Gramley's testimony is firm and positive to the effect that one split second before the accident there wasn't any vehicle at rest or in motion on the land outside the barracks, to the north or to the south. Thus conclusively the decedent's vehicle had to be in motion and had to come from somewhere to arrive at the site of the accident."

The record challenges this statement. Gramley testified that *after* he saw the tractor van-type truck on

the highway he then saw the defendant's truck for the first time. It was proceeding northwardly, off the highway. "Q. And, Officer, getting back then to the actual site: You saw the soil company truck start to raise dust, is that correct? A. Yes, sir. Q. And you saw it *continue in motion for some time*: Is that correct? A. Yes, sir." (Emphasis supplied.)

Later, Gramley said that he had the defendant's truck in view for five seconds. As short a time as five seconds may seem generally, it can, in a sharply defined quickly developing crisis, constitute a palpably appreciable segment of chronology. Certainly, in a prize fight, five seconds to the battling pugilists, can well represent the difference between ignominious defeat and triumphant victory.

In five seconds' time the Mayberry truck could properly have left the highway and crossed over to the driveway in order to proceed to the police barracks or garage. In those five seconds the defendant's driver could have seen the Mayberry truck directly in his path. If he had had his vehicle under control he could have returned to the highway or decelerated (if it was impossible to stop) to the point that in the collision with the Mayberry truck the diminishing momentum would not have been violent enough to kill its driver. Certainly there was a question of fact for a jury as to whether 30 miles an hour was a proper speed over gravel. Gramley was asked "whether or not a vehicle will stop as easily, as readily, upon a gravel-type surface as it will upon a macadam-type surface or a concrete surface?" He replied: "It will not."

Despite the testimony of Malcolm Gramley and John Nowak, the determination of liability for the accident in this case depends as much on circumstances as on direct testimony. Nowak testified that the Mayberry truck was headed toward him just before the collision.

Gramley testified that immediately after the collision "The Mayberry truck was headed toward the east, off the highway, about 15 feet."

To head toward the east would mean to head for the barracks or the garage, both located on the east side of the highway. Gramley also testified "that the right front fender, as far back as the support of the windshield on the right side, from the bumper back" of the Mayberry truck was damaged. The photographs introduced into evidence verified this statement. All these circumstances offer a likely explanation that the Mayberry truck crossed the highway and started up the driveway to the barracks or garage. If the evidence would substantiate this explanation of the accident, the plaintiff would be entitled to have that possibility considered by the jury. And, in order to prevail, it would not be necessary for the plaintiff to show that no other explanation for the accident was possible.

When there are two theories as to how an accident happened, one imposing liability on the defendant and the other excluding it, it is for the jury to decide which theory is so bolstered by fact, logic, credibility of witness and natural sequence of events that it predominates in probability over the other. The court may not take the decision away from the jury unless the evidence, on the high plateau of incontrovertibility, so dominates the horizon of credibility that it excludes to a moral certainty the theorem of liability.

In *Smith v. Bell Telephone Co.*, 397 Pa. 134, 138, this Court, speaking through Justice McBRIDE, said: "It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. The judge cannot say as a matter of

law which are facts and which are not unless they are admitted or the evidence is inherently incredible. Also, it is beyond the power of the court to say whether two or more reasonable inferences are 'equal' . . . The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant."

In *Lear v. Shirk's Motor Express Corp.*, 397 Pa. 144, 152, this Court said further on this subject: "A plaintiff is entitled to have his case considered by the jury even though he does not show that the only reasonable inference is that defendant's negligence was the proximate cause of the accident. It is enough that he produces evidence which may properly be found by the jury to justify an inference that the defendant's negligence was the proximate cause of the accident because such evidence outweighs even though it does not exclude an inference that the defendant was not negligent or that his negligence was not the proximate cause of the accident."

In this case, no eyewitness saw every phase in the happening of the accident. In such a situation, in fixing civil responsibility for the mishap, one must deal, as already indicated, in probabilities. Thus the jury here could find that it was more likely that the driver of the defendant's truck did not have his truck under control, or that he failed to see the truck ahead of him because of the dust his own vehicle created than that the decedent recklessly, and with contemptuous disregard for death crossed the highway and entered into the path of traffic coming from the opposite direction.

As heretofore stated, in considering a directed verdict for the defendant, all reasonable inferences are to be resolved in favor of the plaintiff. Thus, if the theory of non-liability moves over the dark road of an un-

reasonable possibility while the theory of liability proceeds over a well-lighted road of acceptable explanation of the accident, it would be unwise and illogical to follow the dark road instead of the lighted one. In any case, it is for the jury to decide which road is more likely to lead to a reasonable revelation of what occurred.

The learned court below said with reason, logic and propriety: "While it is true that plaintiff's eye-witness Officer Gramley was unable to testify as to how decedent's truck got to the point of collision, nevertheless he did testify as to circumstances from which it could be reasonably inferred that decedent's truck was in front of defendant's vehicle at such a distance ahead of it and for such an interval of time as to enable defendant's truck driver to avoid the collision, had he been properly alert and properly in control of his truck."

The defendant also argues that the plaintiff may not recover because the decedent driver was guilty of contributory negligence. But what we have said about the defendant's negligence can as equally be said about the question of contributory negligence, namely, that, considering all the circumstances, it was a question of fact for the jury. It is true, as the defendant company argues in its brief, that the presumption a person killed in an accident has exercised due care may be rebutted by positive evidence to the contrary, but the rebuttal evidence here does not exclude, as a matter of law, that the decedent was legitimately in the driveway when he was struck.

The order of the court below is affirmed and the record remanded for a new trial.