312 F.2d 737
 John J. MEEHAN, Administrator of the Estate of Donald H.
Worrell, Deceased, Appellant,
v.
GULF OIL CORPORATION, Appellee.
William J. KERNAN, Administrator of the Estate of Arthur E.
Milan, Deceased, Appellant,
v.
GULF OIL CORPORATION, Appellee.
 Nos. 13916, 13917.
 United States Court of Appeals Third Circuit.
 Argued Oct. 18, 1962.
Decided Jan. 23, 1963, Rehearing Denied March, 5, 1963.
 
 1
 Abraham E. Freedman, Philadelphia, Pa. (Martin J. Vigderman, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellants.
 
 
 2
 John B. Hannum, III, Philadelphia, Pa. (John C. Keene, Pepper, Hamilton & Scheetz, Philadelphia, Pa., on the brief), for appellee.
 
 
 3
 Before McLAUGHLIN and HASTIE, Circuit Judges, and DUMBAULD, District judge.
 
 
 4
 DUMBAULD, District Judge.
 
 
 5
 Even during argument on appeal counsel in this case spent much of their time in ad himinem altercation and wrangling of the sort characterized by the trial judge as 'arguments involving personalities' (R. 228a), rather than in dealing with the actual issues involved. A fortiori there is abundant chaff reflecting similar acrimony in the 639 pages of the trial record which has been printed on appeal. While a certain amount of contentiousness is perhaps wholesome, or at least inevitable, and advocates must necessarily to some extent convert ther courtroom into an arena where they may clash with the clang of armor like champions astride spirited steeds in mediaeval trial by combat, nevertheless it is clear that the quarrelsomeness exhibited in this case was considerably overdone. Such conduct, as Judge Dobie once had occasion to remark, 'adds nothing to either the strength of the case' of the parties 'or to the credit of their counsel.' American Trucking Ass'ns. v. United States, 56 F.Supp. 394, 401 (E.D.Va.1944).
 
 
 6
 The actual issue before this Court, of which counsel at times lost sight, is simply whether there was enough evidence connecting the defendant with the explosion and fire in which plaintiff's decedents lost their lives to warrant submission of the case to the jury. We conclude that there was, and that therefore the trial court should not have granted judgment n.o.v.
 
 
 7
 The instant suits (involving diversity jurisdiction) were brought under the Pennsylvania Wrongful Death and Survival statutes. Plaintiffs' decedents were crew members of a tugboat operating on the Schuylkill River, at Philadelphia.
 
 
 8
 On November 18, 1952, the tugboat made an uneventful northbound trip upriver, passing defendnat's premises on its starboard side. The scow being towed carried open-flame kerosene lanterns on each corner. This was between 9:00 and 10:30 P.M. The trip took about 25 minutes. Ten minutes later the scow was delivered, and replaced by a loaded scow, which also carried two open-flame lanterns. The return trip to a point opposite defendant's premises took about half an hour. The flood tide was moving upriver during the return trip.
 
 
 9
 At a point near the Penrose Avenue Bridge, a short distance upriver from defendant's premises, there was an explosion rumbling like thunder followed by fire on the river. The flames surrounded the tugboat, being first seen on the water. There was fire downstream from the vessel, extending 100 to 150 feet from the bow of the vessel towards defendant's premises. The fire continued to burn for about twenty minutes.
 
 
 10
 Although defendnat contended, inter alia, that the fire started on board the vessel, the fire marshal's testimony after his examination of the tugboat showed that the fire came from the outside.
 
 
 11
 Defendant's expert witness said that the fire started on board the tug, and that the witnesses who testified that there was fire on the river were confused by an optical illusion and that what they saw was really a reflection on the river of the fire on board the tug.
 
 
 12
 This expert in support of his view mentioned that no one had said there was an explosion. But in fact there was testimony of an explosion, rumbling like thunder.
 
 
 13
 In any event it was for the jury to decide which version of the facts was to be accepted as the issis of its verdict.
 
 
 14
 There was evidence that during the tug's trip upstream, and up to the time of the fire, tankers were loading and unloading inflammable products at defendant's premises. There was also evidence of discrepancies between the amounts shown to have been pumped from the shore tanks and the amounts shown to have been received on board the tankers. Defendant offered various explanations for the shortages, such as that they represented pipe line capacity, valve leakage, or compressibility. It was for the jury to say whether those explanations accounted for the losses, or whether any of the missing products got into the water and burned in the fire. Mayberry v. Bule Ridge Soil Pep, Inc., 402 Pa. 264, 269-270, 167 A.2d 264 (1961).
 
 
 15
 Plaintiffs' expert witness, computing the speed of the tide and the rapidity of flow concluded that a light hydrocarbon was burning, and that the material must have come from somewhere within 5000 feet of the place of the fire, and the defendant's premises is the only source located within that distance, and therefore he concluded that the fuel burned came from defendant Gulf Oil's loading docks southeast of the Penrose Bridge. The jury would be warranted in believing plaintiffs' expert rather than defendant's.
 
 
 16
 The trial Court apparently took judicial notice that in the area of the fire 'there are numerous refineries and other gas and oil installations', and hence concluded that 'the expert's opinion as to the possible cause of the fire is pure speculation.' In response to a question from the bench at the argument of the appeal, however, defendant's counsel conceded that in the vicinity of the fire there was no evidence of the existence of other installations, and that he could not identify any other oil company's plant as a possible source of the burning fuel.
 
 
 17
 Under the circumstances, the evidence connecting the defendant with the fire was sufficient to permit the jury to draw the conclusions which it did. The motion for judgment n.o.v. should have been denied.
 
 
 18
 With respect to the alternative grant of a new trial, the trial judge's conclusion must be sustained. Ordinarily a trial court's decision with regard to granting a new trial is unreviewable, when the trial judge's discretion is exercised in accordance with acceped legal standards. In the case at bar the reason assigned for granting a new trial was not merely that the verdict was against the weight of the evidence, but also that distorting or undesirable occurrences took place during the trial. Hence it cannot be said that the court is usurping the function of the jury with regard to an ordinary matter involving determination of credibility. It follows that in accordance with Lind v. Schenley Industries, 278 F.2d 79, 88-91 (C.A. 3, 1960), the trial judge's determination of this matter should not be disturbed. Since the case must be retried, we think it well to call to the attention of all parties concerned the principles enunciated in Johnson v. Baltimore & O. R.R. Co., 208 F.2d 633, 635 (C.A. 3, 1953); and Moran v. Pittsburgh-Des Moines Steel Co., 183 F.2d 467, 471-472 (C.A. 3, 1950), to which it is doubtful that full effect was given during the course of the trial now under review.
 
 
 19
 The judgment of the District Court will be reversed and the record remanded for further proceedings in accordance with this opinion.