Francis J. McCORMICK, Plaintiff,

v.

CITY OF WILDWOOD and Cape May County, Defendants.

Civ. A. No. 1025–73.

United States District Court,
D. New Jersey.

Nov. 3, 1977.

Beasley, Hewson, Casey, Kraft & Colleran by James E. Beasley, Philadelphia, Pa., Wilinski, Suski, Kille & Scott by Robert W. Scott, Camden, N.J., for plaintiff.

Kisselman, Deighan, Montano & Summers by G. Wesley Manuel, Jr., Cherry Hill, N.J., for defendant City of Wildwood.

Lloyd, Megargee & Steedle by Michael R. Connor, Atlantic City, N.J., for defendant County of Cape May.

## OPINION

COHEN, Senior District Judge:

A new trial is sought by the plaintiff in this diversity negligence action, wherein he alleges that his blindness was caused by the defendants' failure to render appropriate medical care to him during his incarceration

in the defendants' jails between November 14 and December 2, 1971. The plaintiff maintained that during this period a benign brain tumor (a meningioma) impinged upon his optic nerves causing irreversible damage. The defendants deny negligence and assert the defense of contributory negligence, in that the plaintiff failed to seek medical attention prior to his imprisonment.

At trial, the Court submitted the issue of negligence to the jury and, over the plaintiff's objection, also submitted the issue of contributory negligence. No request was made for special interrogatories, nor were any submitted. The jury returned the following general verdict, presently under attack:

> THE FOREMAN: *Hoping that we have understood the Charge of the Court properly,* we have determined that in the action concerning Wildwood there is no cause for action.
>
> . . . .
>
> In the action concerning Cape May County, we determined that there is cause for action due to negligence, *if that was the way we should interpret the charge.* We have determined that the probable cause of blindness is due, *perhaps* 25 percent to contributory negligence on the part of the plaintiff, and *approximately* 75 percent to the negligence of Cape May County, *in their discharge to Ancora.*
>
> We *suggest* an award of *approximately* $175,000 to Mr. McCormick. We have broken it down, if that is of interest to the Court, in the amount of $120,000 invested for wages, and *approximately* $50,000 for bills, pain, and suffering, and it is signed by the entire jury. (Tr., 12–11–76, at 63–64) (emphasis added).

Upon receipt of this verdict, judgment in the amount of $175,000 was entered solely against the defendant, Cape May County.

Plaintiff filed a Motion for a New Trial urging (1) the irreconcilability of the verdict and (2) the improper submission by the Court to the jury of the issue of contributory negligence.

The defendant, City of Wildwood, resists the plaintiff's motion urging that the jury's verdict as to it was proper and should not be disturbed. The defendant, Cape May County, seeks a Judgment Notwithstanding the Verdict maintaining that inasmuch as the jury determined that the plaintiff was 25% contributorily negligent, a judgment of No Cause for Action should be entered by the Court in its favor.

Issue is raised by the plaintiff as to the untimeliness of the filing of Cape May's motion. However, in light of the Court's determination that a new trial must be granted as to both defendants, this issue is inconsequential. A recitation of the pertinent facts is deemed appropriate.

The plaintiff had been visiting in the City of Wildwood, New Jersey, in November, 1971. On the morning of November 14, 1971, he awoke with what he described as a severe headache and while attempting to find a ride back to his home in Philadelphia, he was taken into custody by an officer of the Wildwood Police Department. The arrest was based on the police officer's observation of the plaintiff's physical condition. The plaintiff told the officer he needed help. Upon arrival at Police Headquarters a charge of being under the influence of drugs was made against the plaintiff. Even though he was examined by a pharmacist on behalf of the City of Wildwood, there was no scientific blood study or any other objective evidence in confirmation of plaintiff's alleged drug usage. Upon conviction in the Wildwood Municipal Court, he was sentenced to serve thirty days in jail, in lieu of a fine. The plaintiff contends that during his four day custody by the City of Wildwood he repeatedly requested medical attention for his headaches and blurred vision which requests went unanswered. On November 17, 1971, he was transferred to the Cape May County jail where he was to complete the remainder of his thirty day sentence. While in Cape May's custody, during a three week period of incarceration, the plaintiff urged that his vision had become progressively worse, his headaches more severe and his repeated requests for medical attention ignored. Finally, on De-

cember 1, 1971, Dr. Kulick, a physician engaged by Cape May, examined the plaintiff and found severe loss of vision bilaterally (dating back three weeks) and weakness in the left arm (Tr., 11–30–76, at 54–55). He recorded a history of severe intermittent headaches for a period of 18 months, and constant headaches for three weeks (*id.* at 54). A diagnosis of brain tumor was made and, for reasons unclear to this Court, Dr. Kulick ordered plaintiff's involuntary commitment to Ancora Psychiatric Hospital, a mental institution without neurosurgical operative facilities (*id.* at 37). There, a definitive diagnosis of a readily apparent brain tumor was made. Dr. Lee, Assistant Attending Medical Director, testified that the damage had already occurred. On the following day, December 2, 1971, prior to the completion of his sentence, the plaintiff was discharged from custody, essentially blind.

The findings of papilledema, restriction of visual field, and left arm weakness suggested an increase in intercranial pressure.

It is undisputed that the plaintiff had developed a brain tumor prior to and during his period of incarceration in both City and County jails. Equally undisputed is that the plaintiff's total and permanent blindness is a result of the tumor and that early diagnosis of the same is mandatory to prevent serious brain damage or blindness. All the medical experts agreed that this type of tumor, although progressive in character, may in the early stages of its growth leave the patient without any symptoms. Further, that the brain can withstand a certain amount of compression from a tumor's growth without indication of neurological signs. However, at a certain point, the slightest increase in pressure will cause enormous changes, which in this case resulted in plaintiff's blindness.

Plaintiff urges that this critical period was reached during his incarceration in both defendants' jails; that he constantly complained, but received no appropriate medical care at all; and if he had received the required treatment, there would have been complete recovery of vision (Tr., 12–1–76, at 36). However, because of the failure to render treatment, the damage became irreversible between November 14 and December 1, 1971 (*id.* at 58). Contrariwise, defendants assert that there was an absence of any symptoms during the period of plaintiff's imprisonment and, therefore, he did not complain and, as a consequence, their employees acted reasonably; alternatively, that plaintiff was contributorily negligent in failing to seek medical care prior to his imprisonment.

I.

## IRRECONCILABILITY OF THE VERDICT

In seeking a new trial the plaintiff asserts that the jury was confused as to its proper function; that this confusion was inferable from its repeated disclaimers about its understanding the charge of the Court properly; and that the substance of the verdict cannot be reconciled with the charge.

The jury was instructed to consider the plaintiff's possible contributory negligence. In doing so, the Court charged that the jury could not compare the degree of negligence between the plaintiff and the defendants if it found that plaintiff's negligence was a substantial factor in bringing about the blindness (Tr., 12–11–76, at 27).

Further, the Court instructed that the verdict must be for either or both defendants or for plaintiff against defendants in one lump sum amount (*id.* at 44).

The jury returned with a confused verdict which did not comport with the Court's instructions.

Firstly, as to both defendants, the jury admitted confusion in its "hope" that it understood the Court's charge, in its finding of a cause of action against Cape May County "if that is the way we should interpret the charge," in its determination that the "probable" cause of blindness is due "perhaps" 25% to plaintiff's negligence and "approximately 75% to the negligence of

Cape May County in their discharge to Ancora." [1]

Secondly, the verdict was clearly inconsistent with the charge as to the County of Cape May. In contravention of the Court's instructions, the jury compared degrees of negligence between the plaintiff and the County. That its award was broken down (in a mathematically incorrect manner) instead of one lump sum amount is also inconsistent with the charge.

■ A verdict finding matters uncertainly or ambiguously is insufficient to support a judgment. *Prentice v. Zane's Administrator,* 49 U.S. (8 How.) 470, 12 L.Ed. 1160 (1850); *Hartnett v. Brown & Bigelow,* 394 F.2d 438 (10th Cir. 1968).[2]

■ Granting a new trial is the appropriate remedy where the jury's verdict does not comport with the Court's instructions. In *Colonell v. Goodman,* 78 F.Supp. 845 (E.D.Pa.), aff'd, 169 F.2d 275 (3rd Cir.), *cert. denied,* 335 U.S. 870, 69 S.Ct. 166, 93 L.Ed. 414 (1948), the jury disregarded the Court's instructions. In a post-trial motion, the court reasoned,

I do not think that the Court's instructions to the jury were erroneous but, right or wrong, the refusal of the jury to find in accordance with them necessitates the award of new trial. "Nonconformity of the verdict to the judge's charge is ground for a new trial, according to the weight of authority, regardless of the showing as to whether the instructions were right or wrong. Even if erroneous, they constitute the law governing the case, and it is the duty of the jury to follow them. Any other rule, it is said, would lead to endless confusion, sanctioning disregard of the court's opinion of the law applicable to the pleadings and the evidence, and rendering its instructions impotent except where willed otherwise by the jury." Am.Jur., New Trial, Sec. 127. 78 F.Supp. at 849.

■ Accordingly, inasmuch as the jury's verdict in the present case was confused and inconsistent with the charge, plaintiff's motion for a new trial shall be granted against the defendant Cape May County.

■ Admittedly, it is less clear that a new trial should be granted against the City of Wildwood, because the verdict, on its face, does not contradict the Court's instructions. However, it is a court's right and duty to order a new trial if it deems it in the interest of justice to do so. *Kernan v. Gulf Oil Co.,* 201 F.Supp. 117, 121 (E.D. Pa.1962), aff'd, 312 F.2d 737 (3rd Cir. 1963); Wright & Miller, *Federal Practice and Procedure,* § 2803.

The jury's manifest confusion regarding the Court's instructions, the possibility that the jury conducted some sort of comparative negligence test to find no cause for action as to Wildwood, and the resulting confusion in not being able to consider plaintiff's first four days of incarceration in a new trial against Cape May necessitate the granting of a new trial against the City of Wildwood, in the interest of justice.

The foreman announced the jury's verdict of no cause against Wildwood in tentative terms. The verdict was prefaced with the words, "Hoping we have understood the Charge of the Court properly . . . " In context of an otherwise confused and inconsistent verdict, this phrase implies that the jury may not have understood their proper role under the instructions as given by the Court.

For example, the jury may have rendered a verdict of no cause for action as to Wildwood after having applied comparative negligence standards, in contravention of the jury charge. This possibility is strong in light of the jury's wrongful application of a comparative negligence standard as to the County of Cape May. Moreover, submis-

---

1. We do not understand the meaning of "in their discharge to Ancora" in light of the issues submitted to the jury.

2. In *Benner v. Interstate Container Corp.,* 73 F.R.D. 502, 504 (E.D.Pa.1977), the court stated,

"There is both federal and state law, though no Third Circuit case on point, to support the proposition that the trial judge should not receive an inconsistent or perverse verdict . . . "

sion of the contributory negligence issue may have resulted in the jury's finding of no cause for action against the City. Inasmuch as the Court erred in its submission of this issue, this error in itself is sufficient cause to set aside the no cause for action verdict.

Finally, failure to allow the jury in a retrial to consider Wildwood's conduct during plaintiff's first four days of incarceration may unduly confuse the jury, as the County will undoubtedly raise this issue.

Thus, the interest of justice will be served by granting a new trial against the City of Wildwood.

Wildwood asserts that the verdict in favor of the City may not be upset, because the Court has an obligation to reconcile apparent conflicts in the jury findings if that can be reasonably done. Analogizing to cases where the jury is directed to answer a series of special interrogatories in support of its verdict, the City contends that to search for one possible view of the law which would make a jury finding inconsistent is violative of the Seventh Amendment.[3] It is maintained that the Seventh Amendment requires the Court to adopt any view of the case which makes the jury's answers consistent.[4]

■ Reliance on this line of cases is misplaced. They are distinguishable in that they deal with answers to special interrogatories submitted to the jury. Pursuant to *Fed.R.Civ.P.* 49(b), the court, having submitted special interrogatories to the jury, has the option of entering judgment upon the answers to special interrogatories notwithstanding any general verdict accompanying them. It must give credence to the jury's special findings of fact. Thus, courts will generally accept the verdict which can be logically derived from the answers to specific interrogatories submitted by the court.

In the present case, no special interrogatories were requested, nor were any submitted. Therefore, *Fed.R.Civ.P.* 49(b) is not applicable. Indeed, the very fact that the jury returned with a supporting explanation (albeit tentative) shows confusion, inasmuch as the Court instructed that it return a general verdict.

In any event, the Court cannot, without unfair prejudice to the parties, reconcile the conflicts in the verdict because it cannot determine the method by which the jury reached its verdict regarding the City of Wildwood.

■ It is clear that where a jury's general verdict cannot be reconciled, a new trial should be granted. In view of the manifest confusion and inconsistency throughout the verdict and its incapability of being molded, granting a new trial is the appropriate remedy, under law and in the interest of justice, as to both defendants. A verdict so contradictory and irreconcilable cannot support the judgment.

## II.

## JURY CONSIDERATION OF PLAINTIFF'S CONTRIBUTORY NEGLIGENCE

Plaintiff's second point in support of his motion for a new trial is that the Court erred in submitting the issue of plaintiff's contributory negligence to the jury, because there was insufficient evidence upon which to base that instruction.

It was the defendants' position that the plaintiff had no symptoms and therefore did not complain and, as a consequence, their employees acted reasonably. This contention was based on the history of severe intermittent headaches for eighteen months prior to November 14, 1971.

---

**3.** *Celanese Corp. of America v. John Clark Industries,* 214 F.2d 551 (5th Cir. 1954); *Machado v. States Marine-Isthmian Agency, Inc.,* 411 F.2d 584 (5th Cir. 1969); *Miller v. Royal Netherlands S.S. Co.,* 508 F.2d 1103 (5th Cir. 1975).

**4.** *Atlantic & Gulf Stevedores v. Ellerman Lines,* 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962); *Nice v. Pennsylvania R. R. Co.,* 168 F.Supp. 641 (D.C.Ohio 1959); *Griffin v. Matherne,* 471 F.2d 911 (5th Cir. 1973); *McVey v. Phillips Petroleum Co.,* 288 F.2d 53 (5th Cir. 1961); *Elston v. Morgan,* 440 F.2d 47 (7th Cir. 1971).

Defendants maintain that the issue of contributory negligence was properly submitted to the jury. Their major arguments will be discussed *seriatim*.

Defendants assert that plaintiff's failure to seek medical care for his continuing headaches, over an eighteen month period before his incarceration, constitutes contributory negligence. To sustain this argument would impose upon an ordinary layman a standard of care to which neurological experts must adhere. The Court will not hold plaintiff to such a strict standard.

 Under the law of this case,[5] contributory negligence would constitute a defense in an action grounded on negligence. *Raritan Trucking Corporation v. Aero Commander, Inc.,* 458 F.2d 1106 (3rd Cir. 1972). The defendant bears the burden of pleading and proving plaintiff's negligence *and that such negligence contributed to the injury as a proximate cause. Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc.,* 53 N.J. 157, 161, 249 A.2d 382 (1969).

 Assuming that plaintiff did fail to seek medical attention for his headaches prior to incarceration in defendants' jails[6], the Court nevertheless finds that defendants failed to meet their burden of establishing proximate causation, *i. e.,* that had McCormick gone to a doctor with complaints of headaches, that the doctor would have diagnosed a brain tumor, ordered appropriate therapy, and saved the plaintiff's eyesight. The issue of causation was defendants' burden; it was not met. In fact, defendants' expert testimony tended to rebut that issue.

Dr. Scheuerman, defendants' expert, testified that on the basis of plaintiff's physical condition and complaints of headaches while incarcerated at Wildwood, the symptoms would not indicate any specific neurological problem (Tr., 12–8–76, at 163–165); that medical personnel would be "hard

pressed" with such vague symptoms to consider a brain tumor, and that a neurosurgeon would not consider a brain tumor in the circumstances (*id.* at 172–173). He further testified that only one out of 1000 of those visiting his office with complaints of headaches will have a brain tumor (*id.* at 174).

Dr. Yaskin, another defense expert, testified that the tumor's climactic and fulminating point in clinical process was not reached until the plaintiff's imprisonment (at the onset of visual disturbances) so that when plaintiff was first imprisoned, he did not clinically present the symptoms which one would identify with a brain tumor (Tr., 12–9–76, at 127–128, 178). Dr. Yaskin did indicate that plaintiff was "insensitive" to his condition (*id.* at 159), but this testimony does not tend to prove that an examining physician would have diagnosed a brain tumor previous to plaintiff's incarceration.

 Thus, the record clearly indicates that defendants did not sustain their burden of proving plaintiff's contributory negligence, inasmuch as they failed to show proximate causation. Therefore, the Court erred in its instruction to the jury to consider plaintiff's negligence.

 Where a prejudicial error of law is made, the granting of a new trial is an appropriate remedy. Wright & Miller, *Federal Practice and Procedure*, § 2805; *See,* generally, *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). In accord is the Third Circuit, which ordered a new trial where the evidence in a negligence suit could not sustain an instruction of contributory negligence. *Morran v. Pennsylvania R. R. Co.,* 321 F.2d 402 (3rd Cir. 1963).

Defendants also contend that there was ample evidence of plaintiff's failure to make appropriate complaints of headaches while in jail to support a jury finding of

---

5. Inasmuch as this cause of action arose before *N.J.S.A.* 2A:15–5.1 (comparative negligence) took effect, contributory negligence was potentially applicable at the trial of this matter.

6. Defendants' expert indicates that the plaintiff sought and received medical care for his headaches in April, 1971, seven months before his confinement while at the Philadelphia General Hospital. (Tr., Dr. Yaskin, 12–9–76, at 120).

contributory negligence. Although there is some evidence on record to support the above factual assertion[7], it is inconceivable that plaintiff did not complain about a condition that within three weeks resulted in ultimate blindness. In any event, these proofs are probative of the issue of defendants' negligence (i. e., notice of plaintiff's condition) and not to the issue of contributory negligence.

 Defendants further assert that McCormick's failure to pay his fine and obtain release constitutes contributory negligence. This argument is without merit. As the Court instructed, a jailer's duty to provide reasonable medical care is non-delegable. This duty attaches as soon as a prisoner is placed under the jailer's custody. A prisoner has no alternative in securing medical attention if a jailer fails in this regard. That McCormick may have had an opportunity to obtain his release by securing counsel, by being richer than he was, by having his parents pay the fine, by not going to Wildwood in the first place, does not alter the basic duty of the defendants. For as long as the plaintiff was in their custody, for whatever reason, whether rightly or wrongly, the defendants owed a duty to provide appropriate medical care. Thus, the failure of the plaintiff to secure his release does not constitute contributory negligence.

Finally, defendants contend that plaintiff's failure to obtain removal of his tumor immediately upon his discharge from Ancora supports an instruction of contributory negligence. There is no competent medical proof that had McCormick secured immediate medical attention after his release, the effects of his non-treatment until December 2, 1971 would have been reversible. Thus, defendants failed to meet their burden of showing proximate causation. Dr. Schut did testify that had the tumor been removed on December 3 or 4, 1971, plaintiff would have had a "much better chance than later on." (Tr. 12–1–76, at 86).

However, the witness later clarified that the sight that would have been saved by an immediate operation was that of blindness in one eye and only the ability to count fingers (legal blindness) in the other (id. at 12).

Further, plaintiff did seek medical care from Dr. Seidel only a few days after his release and, on January 8, 1972, he was admitted to Jefferson Hospital for surgical removal of his brain tumor. Consequently, there were insufficient grounds to instruct the jury to consider plaintiff's negligence.

Inasmuch as the issue of contributory negligence was improperly considered by the jury, and it cannot be said it was without effect on the jury's verdict in favor of the defendant Wildwood, and on its face the verdict was confused and inconsistent with the Court's instructions, a new trial shall be granted as to both the City of Wildwood and County of Cape May.

Counsel may submit an appropriate order.

---

7. *Stipulation of Jail Guards* (Tr., 12–8–76, at 242–246); Testimony of Stanley Kubiak (Tr. 12–9–76, at 21–22).